Venceslaus Sulinski, Appellee, v. Humboldt and Wabansia Building Corporation et al.
Appeal of Humboldt and Wabansia Building Corporation, Appellant.

Gen. No. 42,263.

Heard
in the third division of this court for the first district.
Opinion filed June 24, 1942.

HERSHENSON & HERSHENSON, of Chicago, for appellant.

JOSEPH M. BARON, of Chicago, for appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

On February 18, 1942, in the superior court of Cook county, Venceslaus Sulinski, plaintiff, filed the following verified complaint against the Humboldt and Wabansia Building Corporation, Michael Ram, R. S. Flacks, Jay R. Lasky, Adolph Haas, Ernest M. Warner and Harry Smith:

"1. That the plaintiff, Venceslaus Sulinski, is the owner and holder of a certificate of stock evidencing thirty shares of the Humboldt and Wabansia Building Corporation, and is one of the original bondholders involved.

"2. That the defendant, Humboldt and Wabansia Building Corporation is a corporation duly organized and existing under and by virtue of the laws of the State of Illinois for the purpose of owning and operating a certain parcel of real estate situated in the City of Chicago, County of Cook and State of Illinois, known and described as follows: Lots Eighteen (18), Nineteen (19), Twenty (20), Twenty-one (21) and Twenty-two (22) (except the South 4⅓ feet of said Lot Twenty-two (22)) in Block One (1) in Johnston and Cox's Subdivision of the South West one-quarter (S. W. ¼) of the South West one-quarter (S. W. ¼) of Section Thirty-six (36), Township Forty (40) North, Range Thirteen (13), East of the Third (3rd) Principal Meridian; that the said premises consist of an apartment building located at 1704–1716 North Humboldt Boulevard, Chicago, Illinois, and contains thirty-one (31) apartments, of the most desirable on the northwest side in the City of Chicago, namely six-five room apartments and twenty- four room apartments with an English basement; and that the approximate gross rentals, although under poor management, exceeds Nineteen Thousand ($19,000.00) Dollars.

"3. That the said corporation acquired the said real estate through a reorganization under provisions of the Bankruptcy Act, as amended and supplemented, and a large number of the persons who were the holders of the former first mortgage bonds secured by the trust deed of said real estate, received shares of stock of said corporation in exchange for their said bonds.

"4. That some time after distribution of the shares of stock to the former first mortgage bondholders, the defendants herein, or some group of them, conspired to obtain the ownership and control of said property, at a price substantially less than its fair market value.

"5. That the purpose of said conspiracy was to purchase shares of stock in the Humboldt and Wabansia Building Corporation upon acquiring control of

said corporation, to elect directors and officers of said corporation of their own choosing, and thereupon sell assets of said corporation to themselves or to their nominee at a low price, with the intention of forcing stockholders in the said corporation to sell their shares of said corporation to the said defendants or their nominees, at a price less than their real value, or that in the event said shareholders would not sell said stock owned by them, to proceed with the sale of the assets of the corporation, and to pay to said stockholders, who had not sold their stock to the defendants, a very low price for the same.

"6. That said Humboldt and Wabansia Building Corporation under its charter, has an authorized issue of 1,220 shares of common stock.

"7. That the defendants, Jay R. Lasky, Adolph Haas and Michael Ram proceeded to purchase from various stockholders a large block of shares of stock, so that they control a sum in excess of fifty per cent of said outstanding capital stock of said corporation, and did thereupon elect their own directors constituting a majority board of directors; that the said majority of the directors of the board of directors immediately in pursuance of a conspiracy to defraud the stockholders took charge and control of the management by placing their nominee, Harry Smith, as the agent of the building; and that in furtherance of said conspiracy the cost of the operation of the corporate property greatly increased and no dividends were paid any more, and although said increased costs were unnecessary and unjustified.

"8. That the defendants, Jay R. Lasky, Michael Ram and Adolph Haas then proceeded to purchase one by one the small stock of the antagonistic shareholders.

"9. That on, to wit: January 20, 1942, in further pursuance of said conspiracy, the board of directors of said corporation at a special meeting of the corporation adopted a resolution recommending a sale of all the

assets and property of the corporation to an unidentified nominee, represented by Wexler and Chritzman, real estate brokers, for the sum of Sixty-four Thousand ($64,000.00) Dollars, which is by far below the actual fair market value.

"10.  That thereupon, Reuben S. Flacks, as nominee secretary of the said corporation, caused notice to be mailed to all stockholders of said corporation, a true and exact copy of which notice is attached hereto and made a part hereof as Exhibit 'A'.

"11.  That the plaintiff charges that the officers and directors of the corporation involved accepted said offer to purchase the property made by said purported real estate brokers for an undisclosed nominee without first submitting the property to other persons who might be interested in purchasing the same; that at no time since the inception of the corporation has said corporation made any effort whatsoever to obtain a purchaser for the said property and has never listed the property with licensed real estate brokers to be sold by them; that the said officers and directors of said corporation have not at any time through advertising mediums attempted to secure a bid for said property, knowing in fact that an offer of five times the gross rental for property of this kind on a boulevard and the Chicago Park District extension would result in a bid approximately from Eighty Thousand Dollars ($80,000.00) to Ninety Thousand Dollars ($90,000.00), at least.

"12.  That the acts of the defendants herein, and each and every one of them, are and have been illegal, oppressive and fraudulent, and that the defendants have conspired to prevent the stockholders of the Humboldt and Wabansia Building Corporation from attaining the fair market value of their stock, and have conspired to prevent the property and assets of the Humboldt and Wabansia Building Corporation from being sold at its fair market value, and that unless a

proposed sale of the assets and property of the Humboldt and Wabansia Building Corporation is enjoined and restrained, the stockholders of said corporation will suffer irreparable damage and injury.

"13. That the plaintiff charges that it is to the best interests of the minority stockholders that the property should not be sold at this time in view of the fact that we are now entering an era which may properly be called 'a real estate boom period' and acute shortage of apartments in the vicinity of the building involved, being a vicinity near a so-called defense area, it is improper for the officers and directors of this corporation to even consider an offer which would pay the stockholders of this corporation the mere pittance of twenty-nine cents on the dollar and when they, the officers and directors submit an offer especially of this type and a report of operations for period ending September 30, 1941, which is misleading and disguised, which will more fully appear at the trial of this cause.

"14. That in order to fully protect the interest of the plaintiff and of the other persons similarly situated, who are minority stockholders of the said building corporation, and who have been and are being defrauded by the wrongful conduct of said defendants, and in the event the court decrees that a sale of the property shall be held now then it is necessary that this Court take complete charge of the said corporation, through the appointment of a liquidating receiver, pursuant to Section 86 and 87 and other pertinent provisions of the Business Corporation Act, and that this Court shall liquidate the assets and business of the said building corporation; that the plaintiff herein is the holder and owner of thirty shares of stock of said building corporation, and has said shares of stock in her possession at the present time, and is entitled to the interest of said building corporation to which thirty shares of stock of the corporation should be entitled,

upon the distribution of the assets of said corporation.

"15. That the shares of stock of the Humboldt and Wabansia Building Corporation are held by numerous persons who are widely scattered, many of whom reside outside of the State of Illinois; that the interest of all of such shareholders, with the exception of those who are made parties defendant hereto, are in no respect in conflict with the interest of the plaintiff herein, and it would be impractical to delay these proceedings to make all of such shareholders parties defendant hereto.

"16. That plaintiff brings this action in her own behalf and on behalf of all other stockholders of the Humboldt and Wabansia Building Corporation similarly situated.

"Wherefore, plaintiff prays:

"(a) That the Court decree and determine that this complaint has been properly filed herein; that the defendants and each of them may be restrained and enjoined from consummating the sale to the purported nominee of the alleged Wexler and Chritzman, real estate brokers, for the sum of Sixty-four Thousand Dollars ($64,000.00), purported to be approved by the directors of the said corporation.

"(b) That an accounting may be had under the direction of the Court, and the amount of money realized by any of the individual defendants from the operation of said real estate should be accounted for herein;

"(c) That a receiver be appointed by this Court for the purpose of liquidating said corporation under the supervision of this Court;

"(d) That the Court appoint a receiver *pendente lite* of the business of the corporation, to take charge of the assets of said corporation, and with powers such as this Court may from time to time direct, and that such proceedings may be taken here as will preserve the assets of the corporation until the full and complete hearing of this cause.

"(e) That the defendant, Humboldt and Wabansia Building Corporation, be dissolved and liquidated, and that the assets of said corporation be sold under order and direction of this Court, and that all the assets of said corporation may be collected and applied in such manner as is required by law and equity, and be distributed among the persons lawfully entitled thereto.

"(f) That the Court decree and determine that the plaintiff has a right to file this suit for and on behalf of said corporation as a derivative action, and that all of the expenses of this action, together with reasonable attorneys fees, be charged as costs herein, against the defendants herein and upon their share of the proceeds and avails of their interest in said corporation.

"(g) And that the plaintiff have such other and further relief in the premises as to the Court may seem just and proper."

The corporation answered that the gross income for the year ending January 31, 1942 was approximately $18,500; denied any conspiracy; asserted that the charges as to wrongdoing and conspiracy consisted of mere conclusions; that the filing of the complaint involved a purely internal controversy in the affairs of the corporation; that a notice was sent to the stockholders pursuant to a resolution of the board of directors, calling for a meeting to be held on February 25, 1942, to consider a proposal for the purchase of the real estate for the sum of $64,000 and to vote its approval or disapproval, and that until the stockholders have acted upon the proposal there is no subject matter for the court to act upon or to enjoin; that an insufficient number of stockholders may be present or they may disapprove, or a higher offer may be made; that plaintiff has a complete and adequate remedy at law for the wrongs he fears; that if the proposed sale is consummated he has a complete remedy under section 73 of the Business Corporation Act [Jones Ill. Stats. Ann. 32.075]; that the complaint fails to allege

any basis for a derivative suit for an accounting from any of the individual defendants as purported to be alleged, without the plaintiff first having made demand upon the corporation for the filing of such suit for an accounting; that the verification of the complaint is defective in that it is made by one who is an agent of the plaintiff without any statement by him that he has any knowledge of the facts alleged. The individual defendants filed a motion to strike the complaint.

On March 10, 1942, plaintiff, by his attorney, stated to the court that a motion theretofore made for a temporary injunction restraining the sale of the premises should be continued generally in view of the representation made by R. S. Flacks, secretary of the building corporation, that an offer of $70,000, with a certified check, was in the hands of Ernest M. Warner, one of the directors; that "the emergency as alleged in a complaint, insofar as it relates to an injunction, had passed and that the hearing was solely for the appointment of a receiver for the corporation." The court then read the complaint, the answer of the corporation and the motion to strike, examined the exhibits submitted and heard the arguments of counsel. The attorney for plaintiff stated his contentions substantially as set out in the complaint. The defendant, Adolph Haas, then handed to the court a letter dated March 5, 1942, addressed to the corporation, stating that Wexler and Chritzman withdrew the offer to purchase the property theretofore made on behalf of Nathan Kaplan, and demanded the return of a deposit of $2,000. Mr. Flacks, secretary of the corporation, informed the court that he was advised that an offer of $70,000 would be made for the property at the meeting of the stockholders. Plaintiff submitted to the court a mimeographed statement showing the receipts and disbursements for a period of eight months. This statement had been mailed to the stockholders in February 1942, in connection with the presentation to them of the offer

of $64,000. This statement showed a rental income for the eight-month period of $12,486.40, and expenses of $11,159.80, or a net income before depreciation of $1,326.60. Pursuant to leave of court, the plaintiff amended his complaint by adding an allegation that "plaintiff at two annual meetings of the defendant building corporation has made numerous objections to the management and supervision of the corporation and to the statements or reports of the corporation by its directors and officers and that any further demand by plaintiff to the officers and directors of the corporation would be unavailing and useless." On March 11, 1942 the court entered an order appointing Lester Wells receiver of the corporation and investing him with the usual powers of a receiver. This appeal is prosecuted for the purpose of reversing that order.

We have read the complaint as amended, the answer, the motion to strike the complaint and the transcript of the proceedings before the Chancellor in the argument on the motion for the appointment of the receiver. Although the order recites that the court heard testimony, the record presented to us shows that no witnesses were sworn. In the colloquy between the court and counsel certain statements were made which were accepted by all of the parties as the truth. In deciding the motion, however, the court acted on the complaint. Plaintiff maintains that the appointment of the receiver was warranted under sections 86 and 87 of the Business Corporation Act (sec. 157.86 and 157.87, ch. 32, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 32.088, 32.089]) and contends that the portion of section 86 providing that courts of equity shall have full power to liquidate the assets and business of a corporation upon the suit of a stockholder when it is made to appear that the acts of the directors or those in control of the corporation are illegal, oppressive and fraudulent or that the corporate assets are being misapplied or wasted, is applicable to the factual situa-

tion presented by the verified complaint and the exhibits presented at the hearing. Defendant argues that the appointment of the receiver was unwarranted and a clear abuse of discretion. No evidence was heard by the court, despite the fact that material allegations of the complaint were denied by the answer filed by the corporation.

The complaint charges that the defendant conspired to obtain ownership and control of the real estate at a price substantially less than its fair market value; that defendant purchased a large block of shares of stock in excess of 50 per cent of the outstanding capital stock; that by virtue of the ownership of such stock they elected directors constituting a majority of the board of directors; that these directors in pursuance of a conspiracy to defraud the stockholders, took control of the management by installing Harry Smith as agent of the building and caused the cost of the operation of the property to greatly increase and that no dividends were paid after such control was obtained. These allegations charge fraud. Fraud is never presumed. It must be pleaded and proved. Fraud must be shown by the allegation of facts from which it is the necessary or probable inference. Fraud cannot be made out by the profuse interpolation of adjectives characterizing acts alleged to be done as fraudulently done. It will be observed that the above allegations charging a conspiracy are conclusions unsupported by allegations of specific facts upon which such conclusions rest. The reasonable inference from the above allegations is that defendants purchased more than 50 per cent of the shares of stock that were outstanding. No one will contend that there was anything improper in so doing. Plaintiff then states that by reason of the ownership of more than 50 per cent of the capital stock the defendants were able to elect a majority of the directors. Usually, the majority of the directors are elected by the owners of a majority of the shares of

stock. The complaint then charges that in pursuance
of the conspiracy to defraud, the defendants, by their
control of the directors, hired Harry Smith as agent of
the building, and that in furtherance of the conspiracy
the cost of the operation of the property greatly in-
creased and no dividends were paid after that time.
The directors are the managers of the corporation and
they had a right to hire the agent to operate the build-
ing. Complainant does not charge that Smith mis-
managed the building, or that he misapplied the funds
of the building, but states that the cost of operation
greatly increased. However, the complaint does not
set out any facts to show how the cost of operation in-
creased, or what the cost of operation was before Smith
became agent. This allegation is a pure conclusion.
The allegation that no dividends were paid after Smith
was appointed would be material only if supported by
facts showing incompetence or wrongdoing.

The complaint further charges that on January 20,
1942, in furtherance of the conspiracy the board of di-
rectors at a special meeting adopted a resolution
recommending the sale of the assets to an unidentified
nominee for the sum of $64,000, and that the directors
accepted the offer and called a meeting of the stock-
holders for the purpose of having them vote on the ac-
ceptance of the offer, that the directors did not at any
time attempt to secure bids from others, that the de-
fendants conspired to prevent the stockholders from
obtaining the fair market value of their stock, and that
unless the proposed sale be enjoined the stockholders
will suffer irreparable damage. As suggested by the
defendant, until the meeting of the stockholders is
held, it is difficult to forecast what will take place. As
a matter of fact, as we have seen, the offer of $64,000
was increased to $70,000. Apparently, this satisfied
the plaintiff, for he told the court that in view of the
offer of $70,000 ''the emergency as alleged in the com-
plaint insofar as it relates to an injunction, had

passed.'' From this statement it appears that the allegations as to the sale of the property for the purpose of defrauding the stockholders, should not influence the court in considering the propriety of the order for the appointment of a receiver. Plaintiff was apparently satisfied that the defendants would not attempt to sell the property contrary to the best interest of the stockholders, for he abandoned his application for a temporary injunction.

Paragraph 13 of the complaint recites that it is to the best interests of ''the minority of the stockholders that the property should not be sold at this time in view of the fact that we are now entering an era which may properly be called 'a real estate boom period' and acute shortage of apartments in the vicinity of the building involved, being a vicinity near a so-called defense area, it is improper for the officers and directors of this corporation to even consider an offer which would pay the stockholders of this corporation the mere pittance of 29 cents on the dollar.'' Despite the statement that it was for the best interest of the minority stockholders that the property should not be sold, plaintiff prayed that a receiver be appointed for the purpose of liquidating the corporation and that its assets be sold and distributed among the persons lawfully entitled thereto. At the time the application for the appointment of the receiver was heard, plaintiff was satisfied that the interests of the minority stockholders would not be jeopardized by the sale of the building for the sum of $70,000. Hence, he withdrew his motion for an injunction. The appointment of a receiver for the purpose of collecting the rents and managing the building was based upon the charges, unsupported by statements of fact, that the defendant by hiring Harry Smith as the agent of the building, increased the cost of operation, and that in consequence no dividends were paid. A mere recital of the allegations of the complaint shows that they are conclusions

unsupported by statements of fact on which they are based. We are satisfied that the complaint did not warrant the court appointing a receiver for the property. We further find that the statements made in lieu of testimony at the time of the hearing on the motion and the mimeographed statement presented to the court did not cure the deficiencies of the complaint.

For the reasons stated the order of the superior court of Cook county entered on March 11, 1942 appointing a receiver, is reversed.

*Order reversed.*

HEBEL and KILEY, JJ., concur.