Atwood Vacuum Machine Company, an Illinois Corporation, Plaintiff-Appellant, v. Continental Casualty Company of Chicago, Defendant-Appellee, and The Guild Hall of London, Muchener Ruckv, of Munich, Reinsurance Corporation, of London, Store Brand, of Oslo, Atlas Reinsurance, of Stockholm, Globo Reinsurance, of Toronto, British National, of London, British & Overseas, of London, The Great Lakes, of Toronto, Northern Assurances Co. of London, and the Victory Insurance Co. of London, Defendants.

Gen. No. 52,215.

First District, Second Division.

March 18, 1969.

William T. Kirby and Michael B. Roche, of Chicago, for appellant.

Lord, Bissell & Brook, of Chicago (William H. Hillier, Alex R. Seith, and R. R. McMahan, of counsel), for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

Atwood Vacuum Machine Company brought this action as assignee of nine bills of exchange, after the bills had been presented for payment upon maturity and dishonored, against the twelve named insurance companies which had allegedly joined with an insurance company of Venezuela, Compania Anonima de Seguros Republica (Republica), for the purpose of guaranteeing payment of bills of exchange drawn in Venezuela, among which were the bills at bar. It appears that of the twelve insurance companies named in the original and amended complaints only defendant-appellee, Continental Casualty Company (Continental), was served with summons. Republica was not joined as a defendant.

The original and the first two amended complaints were stricken on motion of Continental and plaintiff was

given leave to file a third amended complaint, which was thereafter filed. The trial court deferred action on Continental's motion to strike the third amended complaint pending tender of a fourth amended complaint and a consideration thereof by the court. Leave to file the tendered fourth amended complaint was denied on the ground that none of the four counts therein stated a good cause of action. The court further ordered that plaintiff not be allowed to plead over or amend the third amended complaint, that Continental's motion to strike the third amended complaint, which was still pending, be allowed, and that the litigation with respect to Continental be terminated as a whole with prejudice to plaintiff and costs to this defendant. Judgment was entered for Continental, and plaintiff prosecutes this appeal.

Count I of the tendered fourth amended complaint alleged generally that between the years 1952 and 1959, business institutions in Venezuela were experiencing difficulties in securing working capital due to a rapidly expanding economy. The count alleged that there developed a procedure and common usage in Venezuela whereby capital was secured by Venezuelan businessmen through the cooperation of small Venezuelan insurance companies and large foreign insurance companies. The procedure and usage was alleged to have been as follows:

An individual Venezuelan businessman would draw a bill of exchange on a nominal drawee and, in order for the bill to acquire value and stability in the money market, its payment was guaranteed by a Venezuelan insurance company. The guaranty on the bill appeared as "bueno por aval" ("good for guarantee"), or an equivalent thereof, written on the bill or on an attached paper, followed by the name of the Venezuelan insurance company granting the aval and the signature of the appropriate officer of that company. However, since the guaranty of the Venezuelan insurance company was not of itself acceptable in the money markets, it was necessary

that its aval be backed by well-known, financially reliable foreign insurance companies. It therefore became the practice that the foreign insurance companies would back the individual Venezuelan insurance company, the latter acting for and on behalf of the former in granting the avals.

Count I further alleged that the Venezuelan insurance company and the foreign insurance companies involved in any particular such association shared premiums and risks in accordance with previously agreed fixed percentages. It was the custom of the brokers and investors in the Venezuelan money markets to inquire of and receive the names of the insurance companies. Venezuelan and foreign alike, which were participating in the guaranty on a particular bill of exchange, as well as the respective percentage interests each participating insurance company had in the guaranty or aval.

The individual Venezuelan businessman would secure repayment of the bill of exchange by depositing securities or executed mortgages with the Venezuelan insurance company granting the aval. A brokerage firm was then engaged to sell the bill to an investor and the proceeds thereof went to the businessman as working capital. When the bill fell due, it would be repaid by the businessman out of funds paid to him by the Venezuelan government for completing his contract as previously agreed. Count I further alleged that all of the defendant companies herein were aware and knew of this custom and procedure, and also knew that those dealing in the Venezuelan money markets would follow this practice.

Count I further alleged that until late 1959, no losses were incurred by any of the insurance companies participating in such ventures in Venezuela. In March 1955 Republica, a small insurance company, was organized to engage in the guaranty operations detailed above. During June 1955, Sterling Offices of Toronto, Canada, organized

a group of foreign insurance companies to participate with Republica, under various forms of business associations, in the business of guaranteeing bills of exchange in Venezuela.

In July 1958, Sterling notified Republica of a change in the makeup of the foreign participating insurance companies. Republica was informed that defendants herein were the new participating foreign insurance companies which would act in conjunction with Republica in guaranteeing bills of exchange, and that the premiums and losses would be shared as follows:

| | |
|---|---|
| Continental Casualty Company | 10% |
| The Guild Hall | 10% |
| Munich Reinsurance, A. G. | 10% |
| Reinsurance Corporation | 10% |
| Store Brand | 10% |
| Republica | 10% |
| Atlas Reinsurance | 7.5% |
| Globe Reinsurance | 7.5% |
| British National | 5% |
| British & Overseas | 5% |
| The Great Lakes | 5% |
| Northern Assurance Co. | 5% |
| The Victory Insurance Co. | 5% |

Count I further generally alleged that in 1957, Seth B. Atwood, plaintiff's assignor, traveled to Caracas, Venezuela, and investigated the financing operations detailed above. Atwood and two of his associates conferred with officers of a number of Venezuelan insurance companies, as well as with the manager of a New York bank operating in Caracas. It was alleged that all of those consulted described the Venezuelan financing operations as detailed above.

The count further alleged that on October 27, 1957, Seth B. Atwood began to purchase bills of exchange, as guaranteed in the manner set out above. It was alleged

that prior to each purchase, Atwood inquired as to the identity of the Venezuelan insurance company granting the aval, and also secured representations as to the participating foreign insurance companies. In the case of the bills of exchange at bar, plaintiff's assignor was advised by Republica that the defendants were the participating foreign insurance companies. Between October 27, 1957, and August 12, 1959, Atwood purchased approximately $2,900,000 worth of bills of exchange, all of which were honored in full at maturity. The bills of exchange at bar, dated August 11, 1958, and thereafter, one of which fell due in October 1959 and the balance of which fell due in August 1960, bore the avals of Republica. The bill which fell due in October 1959 was not honored by the drawer and the acceptor, and the defendants were so notified.

Count I then charged defendants with negligence and specifically alleged that shortly prior to April 15, 1959, Pedro Torres, the president of Republica, and other Republica employees acting with Torres, filed with and collected a false claim against the defendant insurance companies, said false claim having been based upon a bill of exchange which was never in fact guaranteed by Republica. It was alleged that the fact of the fraud was announced in the Caracas newspapers on April 15, 1959. It was also alleged that in June 1959 defendant learned that Republica had ceased honoring its avals. The bill of exchange involved herein, which fell due in October 1959, was thereafter dishonored by the drawer and the acceptor, and by Republica. It was alleged that in December 1959, Torres approached the defendants with a "scheme to help the said insurance company defendants avoid payment of the liabilities under their agreement" with Republica, amounting to approximately 40,000,000 Venezuelan Bolivars, by making a cash payment of approximately 6,000,000 Bolivars to Torres for the defaulting Republica. Count I alleged that the defendants knew or should

have known that the 6,000,000 Bolivars paid to Torres would not be deposited into the treasury of Republica to be made available to holders such as plaintiff's assignor. Republica was closed by Venezuelan executive order in February 1960. The 6,000,000 Bolivars was never paid into Republica's treasury by Torres, who fled the country. Count I alleged that defendants failed to honor the avals on any of the bills of exchange at bar when the bills were presented to them at maturity, after the bills had been presented to the drawers, the acceptors and Republica. Plaintiff alleged that defendants' act in paying the 6,000,000 Bolivars to Torres was intentional and constituted negligence under the laws of Venezuela since defendants knew that Torres had defrauded them of 400,000 Bolivars approximately eight months previous, and since defendants afforded the holders of the bills of exchange guaranteed by Republica neither protection nor opportunity to protect themselves through notice of Torres' acts.

Count II of the tendered fourth amended complaint realleged the general allegations of Count I and specifically alleged that the unwritten agreement entered into between Republica and the defendants, for the purpose of guaranteeing bills of exchange, constituted an attempt to create either a limited partnership or a general partnership under the laws of Venezuela. Count II alleged that because Republica and the defendants engaged in the aforementioned business without having executed a written document, without having filed such document with the local court, without having published an extract of such document in a local newspaper, and without having adopted a name under which they were to have engaged in said business, all of which was required by Venezuelan law, the association was not a "legally constituted partnership" as specifically provided by the pertinent Venezuelan statute. Since the statute rendered all "founding partners, administrators or any other per-

sons who may have acted" in the name of the partnership personally and jointly liable for its operations, Count II alleged that defendants, as such founding partners of a partnership not legally constituted, were liable on the avals after dishonor of the bills of exchange at bar by the drawers and the acceptors thereof, and by Republica. Count I of the third amended complaint corresponds to Count II of the tendered fourth amended complaint.

Count III of the tendered fourth amended complaint realleged the general provisions of Count I and further alleged that Republica, in granting the avals on the bills of exchange at bar, acted as agent for the defendants within meaning of the statutes of Venezuela. The count alleged that defendants are liable as principals on the guarantees of Republica. Count II of the third amended complaint corresponds to Count III of the tendered fourth amended complaint.

Count IV of the tendered fourth amended complaint realleged the general allegations of Count I and specifically alleged that, under the laws of Venezuela, defendants were guilty of fraud. Plaintiff alleged that defendants, through their agent Republica, "with the intention of deceiving and defrauding plaintiff's assignor," represented to Seth B. Atwood that Republica was authorized to assure the prospective purchasers of the bills of exchange at bar that the guarantees would be honored by Republica and the defendants, in the percentages set out above, in the event of nonpayment by the drawers and acceptors of the bills. Plaintiff further alleged that "such statements of fact were either untrue and known to be untrue or were recklessly made without regard for their truth." Plaintiff alleged that the representations of Republica were false, in that at the time they were made, defendants had not in fact agreed that the avals on the bills in question would be honored by Republica and the defendants in the percentages set forth, and that they had no intention of

making such payments. It was finally alleged that plaintiff's assignor relied upon such representations and purchased the bills at bar, which were worthless. Count III of the third amended complaint corresponds to Count IV of the tendered fourth amended complaint. The third amended complaint contained a fifth count, dealing with third party beneficiaries, which was not incorporated into the tendered fourth amended complaint nor in any way raised as an issue on this appeal.

Attached to the complaint as exhibits, in addition to the dishonored bills of exchange in question, were the Spanish texts and the English translations of the Venezuelan statutes relied upon by plaintiff; English translations were also provided by Continental. The statutes and their translations consisted of Venezuelan law governing negotiable instruments, avals, business ventures such as corporations and partnerships, agency, negligence, and fraud. It is undisputed that the translations provided by the parties hereto accurately state the verbiage in English of the Spanish texts cited.

The trial court held that Count II of the tendered fourth amended complaint failed to state a cause of action on the same grounds as Count I of the third amended complaint, namely, since Republica and defendants failed to enter a written contract of their business association and register the same with the appropriate local court in Venezuela, since they failed to publish their partnership status in the newspaper, and since they failed to secure a name under which the partnership was to act, all as required by Venezuelan law in order to create a "legally constituted partnership," only Republica could be held liable for its operations since only Republica did in fact act in granting the avals. The court reasoned that, under the language of the pertinent Venezuelan statute, the "founding partners" of an illegally constituted partnership were not liable for the operations thereof unless they

256

"acted in the name of" the illegally formed partnership, which defendants here did not do.

The court held Count III of the tendered fourth amended complaint did not state a cause of action in agency since, under the meaning of the pertinent provisions of the Venezuelan Commercial Code, only the party whose name appears on the aval can be liable thereunder. The court held that since defendants' names did not appear on the bills in question, they cannot be held liable under Republica's avals.

It was further held that Count IV of the tendered fourth amended complaint did not state a cause of action for fraud since the count contained no allegation that Republica made any false representations of any existing facts to plaintiff's assignor, or that defendants authorized Republica to make any false representations. The court reasoned that plaintiff's assignor was presumed to know the laws of Venezuela when he began trading there and consequently was not justified in placing reliance upon Republica's oral representations that defendants were backing its avals.

Finally, the trial court held Count I of the tendered fourth amended complaint did not state a cause of action for negligence for the same reason that Count IV of the third amended complaint was held not to state a cause of action. However, Count I of the tendered fourth amended complaint based its theory of negligence upon defendants' alleged actions with Torres after Republica ceased honoring its avals, whereas Count IV of the third amended complaint was predicated upon the alleged fraudulent misrepresentations made by Republica to plaintiff's assignor, as were Counts IV of the tendered fourth amended complaint and Count III of the third amended complaint.

The parties are in agreement that the English translations of the Spanish texts of the Venezuelan statutes relied upon in the pleadings substantially reflect the verbiage of those statutes, but a serious dispute exists be-

tween them as to the meaning or interpretation of several of those statutes, relating to partnerships, agency and avals. The parties also agree that the substantive law of Venezuela and the procedural law of Illinois govern the questions raised herein.

Article 219 of the Venezuelan Commercial Code provides:

> "Where in connection with the formation of an association, the formalities required under Articles 211, 212, 213, 214 and 215, as the case may be, are not promptly complied with, and while they are not complied with the association shall not be deemed legally constituted. The founding partners, the administrators or any other persons who may have acted in its name, shall be personally and jointly liable for its operations."

Articles 211, 212, 213, 214 and 215 deal with the written document and the formalities required to create the partnership association. The document of association must be filed with the local Venezuelan Commercial Court, and an extract of the document must be published in a newspaper within the jurisdiction of the court, or, where no newspaper exists, the extract must be posted in the most public places of the association's domicile. The extract referred to above must contain, among other pertinent matters, the names and residences of the founding general partners, the name of the association under which the partnership was to conduct business, and the names of the partners authorized to act in its behalf.

The tendered fourth amended complaint specifically alleged that through Sterling Offices of Canada, defendants and Republica became associated for the purpose of guaranteeing bills of exchange in the Venezuelan money markets in accordance with the trade custom developed in Venezuela during the 1950's. Defendants, it

was alleged, agreed to share the premiums and losses connected with the guaranteed bills on a fixed percentage basis. Count II of the tendered fourth amended complaint specifically alleged that this association was an attempt to organize either a limited partnership or a general partnership under the laws of Venezuela, but that defendants and Republica failed to comply with certain formalities set out in the Venezuelan laws in this regard. Under plaintiff's theory, it cannot be seriously disputed that the alleged association was an incompletely formed partnership, and that consequently Article 219 of the Venezuelan Commercial Code becomes here involved.

The question arises as to the effect of Article 219 upon the liability of the defendants to account for the acts of Republica in the granting of the avals. Plaintiff maintains that because defendants and Republica failed to organize a "legally constituted partnership" by failure to comply with the Venezuelan statutes which regulate the creation of partnerships, they, as "founding partners," became personally and jointly liable for all operations of the illegally constituted partnership, under Article 219. Continental, on the other hand, maintains that only those founding partners "who may have acted in [the partnership's] name" are liable within the meaning of Article 219.

If Article 219 is interpreted as Continental suggests, and as interpreted by the trial court, only those persons who in fact act in the name of the illegally constituted partnership may be held liable for its operations. If, on the other hand, the statute is interpreted as plaintiff suggests, all founding partners (such as defendants) and all administrators, regardless of whether they in fact acted in the partnership name, in addition to those other persons who did in fact act in the partnership name, will be held personally and jointly liable for its operations. Plaintiff maintains that the trial court was in error in adopting Continental's view of the interpretation of

Article 219 without first having considered the advice of experts as to the meaning of the Venezuelan statute.

Articles 438, 439, 440 and 455 of the Venezuelan Commercial Code deal with the creation of avals, and the liabilities and rights incident thereto. They provide:

Art 438 — "The payment of a bill of exchange may be guaranteed by an aval.

"This guarantee may be given by a third party or even by someone appearing on the bill."

Art 439 — "The aval is written either on the bill of exchange or separately on an attached paper.

"It is expressed by the words 'bueno por aval' or any other equivalent expression, and is signed by the grantor of the aval.

"An aval is deemed to exist as a sole consequence of the signature of the grantor of the aval placed on the face of the bill, except where such signature is that of the drawee or drawer thereof.

"An aval must specify for whose account it is granted. In the absence of such an indication, it is deemed to be granted for the benefit of the drawer."

Art 440 — "The grantor of an aval is bound in the same manner as the person for whom he has become guarantor."

Art 455 — "All drawers, endorsers or guarantors by aval of a bill of exchange are jointly and severally liable to the holder.

"The latter has the right to proceed against all of these persons, jointly or severally, without being required to observe the order in which they have become liable.

260

"The same right is possessed by any signer of a bill who has paid it.

"Proceedings against one of the obligees do not prevent proceedings against the others, even against those who are subsequent to the one first proceeded against."

Articles 1684, 1685, 1691 and 1698 of the Venezuelan Civil Code deal with agency and provide:

Art 1684 — "The agency is a contract, by which one person binds oneself, gratuitously or for compensation, to negotiate one or more transactions on behalf of another, who has commissioned him with it."

Art 1685 — "The agency can be express or tacit. The acceptance of the agency can be tacit and result from the execution of the agency by the agent."

Art 1691 — "When an agent acts in his own name, the principal has no action against those with whom the agent has contracted, nor they against the principal. In that case, the agent is obligated directly to the person with whom he has contracted, as if the transaction were his own."

Art 1698 — "The principal is obligated to fulfill all of the obligations contracted by the agent within the limits of the agency. To the extent that the agent acts in excess of said limits, the principal is not bound, unless he expressly or tacitly ratifies such acts in excess of said limits."

Count III of the tendered fourth amended complaint alleged Republica acted as agent for the defendants in the creation of the avals on the bills of exchange at bar. The creation of an aval exists as the "sole consequence

of the signature of the grantor of the aval placed on the face of the bill," and Continental maintains that Republica, and only Republica, can be held liable on the avals on the bills in question since only its name appears on the bills in connection with the avals. However, the Articles governing the creation of avals do not, on their face, necessarily preclude the grantor of an aval from acting as agent for another in granting the aval and binding that principal by such action. A question consequently arises whether Republica, within the interpretation of the appropriate Venezuelan statutes, acted as agent of the defendants, or whether it acted solely in its own right in the granting of the avals in question. Although Continental maintains that plaintiff is here suing on the negotiable instruments themselves, it is clear that plaintiff's tendered fourth amended complaint is predicated upon the guarantees or avals on the instruments, rather than on the instruments themselves. Again, plaintiff contends that the trial court was in error in adopting Continental's view of the interpretation of the Venezuelan statutes governing agency and the creation of avals without first having considered the advice of experts on the matter.

■ We are of the opinion that the trial court should have considered expert testimony and authorities as to the meaning of the Venezuelan statutes before arriving at the determination that Counts II and III of the tendered fourth amended complaint did not state causes of action.

■ While Illinois courts may take judicial notice of the laws of the sister states and of the United States, Ill Rev Stats 1967, c 51, par 48(g), the laws of foreign countries cannot be judicially noticed by Illinois courts. Ill Rev Stats 1967, c 51, par 48(k) ; In re Estate of Glenos, 53 Ill App2d 283, 202 NE2d 833. The foreign law must be proved just as any other fact, but

creates an "issue for the court" rather than one for the jury.

■ No Illinois decision has been cited, or found, bearing on the question of the propriety of a trial court's dismissal of a complaint at the pleadings stage of a case based upon the court's determination of the interpretation of the substantive law of a foreign country, where the parties are in serious dispute as to the interpretation thereof, without having heard expert testimony and/or considered other authorities on the meaning and interpretation of such foreign law. In absence of an Illinois determination on a point of law, the courts of this state will look to other jurisdictions as persuasive authority. Cooper v. Hinrichs, 10 Ill2d 269, 273, 140 NE2d 293.

New York has a liberal judicial notice provision which gives the courts of that state the discretion to take judicial notice of the laws of foreign countries. See New York Civil Practice Act section 344–a. While the New York courts do have such discretion, numerous decisions of that state hold that where any dispute arises concerning the foreign law, the discretion will not be exercised and the foreign law will not be judicially noticed. See generally Sommerich & Busch, The Expert Witness and The Proof of Foreign Law, 38 Cornell LQ 125; De Sairigne v. Gould, 3 Misc2d 452, 148 NYS2d 57; Walton v. Arabian American Oil Co., 233 F2d 541, 544–545.

After an extensive analysis of New York cases bearing on the question of judicial notice of foreign law, Sommerich and Busch turn to a consideration of the proofs necessary to establish a foreign law when the New York court refuses to judicially notice it, a situation paralleling the position of the statute in Illinois regarding judicial notice of foreign laws:

"In spite of the existence of foreign statutes, judgments, treatises and commentaries, or even of 'offi-

cial' declarations or certificates, irreconcilable conflict will frequently arise in bitterly contested proceedings. Such instances call for the opinions of experts in the foreign law involved. It would otherwise seem to be placing too much burden upon the court to expect it to determine the foreign law without other assistance when such situations arise. . . .

"[T]he use of the expert witness may frequently be essential; in all cases expert witnesses are desirable. All misunderstandings concerning facts, differences in translations, paths of reasoning and foundations for conclusions can be explored by direct and cross-examination in the presence of the parties, the court and the jury. The fullest compliance with every concept of fair play is possible in such events." (Pp 147–148.)

It is clear that such "other assistance" is essential in the case at bar due to the dispute between the parties over the meaning of the Venezuelan statutes relating to partnership, avals and agency.

While Continental argues that the pertinent Venezuelan statutes were proved and stipulated to and that it became solely a question for the court as to the interpretation of those statutes, only the verbiage or wording of those statutes was proved and stipulated to, and not the meaning of those statutes.

The citations advanced by Continental in support of its position are not in point. Finney v. Guy, 189 US 335, involved a question arising under the laws of a sister state, not those of a foreign, non-English speaking, civil law country. Chicago & N. W. Ry. Co. v. Tuite, 44 Ill App 535, and Daniel Lumber Co. v. Empress Hondurenas, S. A., 215 F2d 465, involved complete trials and expert testimony relating to the interpretation of the respective laws. In Caribbean S.S. Co. v. La Societe Navale Caennaise, 140 F Supp 16, the court stated, at p 21, that if the case should be heard on its merits, a dispute as to the

264

meaning of the foreign law would exist, and the trial court would be obliged to accept the interpretation of experts or arrive at its own conclusion after a review of the foreign law and the decided cases.

Neither Count I nor Count IV of the tendered fourth amended complaint state a cause of action. Count I charges defendants with negligence in that they paid 6,000,000 Bolivars to Pedro Torres in an attempt to discharge a debt of 40,000,000 Bolivars allegedly owed to plaintiff's assignor and other holders of bills of exchange similarly situated. As is generally alleged by the tendered fourth amended complaint, defendants knew Republica had ceased honoring its avals as of June 1959, and knew also that one of the bills of exchange at bar fell due in October 1959. It is alleged that Torres did not approach defendants for the 6,000,000 Bolivars with his "scheme to avoid payment of 40,000,000 Bolivars" total liability until December 1959. However, eight of the nine bills in question were not due to mature until August 1960, totalling over one-half of the total liability of defendants under their alleged co-guarantees on the bills in question. As noted above, the thrust of plaintiff's tendered fourth amended complaint and third amended complaint is that defendants are liable to plaintiff by virtue of their status as co-guarantors on the bills of exchange in question. If plaintiff is entitled to recover against Continental on the grounds of co-guarantorship, whatever dealings may have transpired between defendants and Torres or Republica after the avals were granted are immaterial; if, on the other hand, plaintiff is not entitled to recover on that theory, any dealings between Torres or Republica and defendants are likewise immaterial.

Count IV alleges that defendants, through Republica, were guilty of fraudulent representations in inducing plaintiff's assignor to purchase the bills of exchange in question. Count IV alleges that Republica, as agent of

265

defendants, and with the intent to deceive, represented to plaintiff's assignor that defendants would guarantee the bills in question in the event of a default on the part of the drawers of the drafts and that this course of conduct was pursued by defendants with intent to induce plaintiff's assignor to purchase the drafts, who in turn relied upon the said representations in the purchase of the drafts.

█ As a matter of procedural law in Illinois, it is well settled that facts must be alleged with particularity in order to state a good cause of action for fraud. It is not enough to characterize acts performed as fraudulently performed. An actionable wrong cannot be made out by characterizing the acts as wrongfully done. The pleading of conclusions alone will not suffice for the factual allegations upon which a cause of action must be based. See Sulinski v. Humboldt & Wabansia Bldg. Corp., 315 Ill App 392, 402, 43 NE2d 181; and Skolnick v. Nudelman, 71 Ill App2d 424, 428, 218 NE2d 775.

█ Continental contends that plaintiff, by tendering its fourth amended complaint, stood on its stricken third amended complaint and acceded to the court's action thereon. Continental argues that plaintiff cannot arise any matters in connection with the third amended complaint on this appeal. As the ruling made on the motion to strike the tendered fourth amended complaint clearly sets out, the motion to strike the third amended complaint was "still pending and undecided" at the time of the ruling on the motion to strike the tendered fourth amended complaint. Ruling on the motion to strike the third amended complaint was deferred by the court until such time as the fourth amended complaint was tendered and the court had an opportunity to "determine whether or not any additional facts are alleged which could give the court reason to grant leave for filing such fourth amended complaint." The "pending and undecided"

motion to strike the third amended complaint was disposed of in the order denying plaintiff leave to file the tendered fourth amended complaint. Plaintiff therefore properly appeals from the order striking the third amended complaint, denying leave to file the tendered fourth amended complaint, and dismissing the action as to Continental.

For these reasons the judgment is reversed and the cause is remanded with directions to grant plaintiff leave to file its tendered fourth amended complaint, except Count I and Count IV thereof, and for further proceedings not inconsistent with these views.

Judgment reversed and cause remanded with directions.

LYONS, P. J. and McNAMARA, J., concur.