MUHAMMAD T. SALAYMEH, Plaintiff-Appellant, v. INTERQUAL, IN-
CORPORATED, *et al.*, Defendants-Appellees.

Fifth District   No. 5—86—0335

Opinion filed May 28, 1987.

Robert D. Owen, Linda M. Castleman, and Robert M. Owen, all of Owen Roberts, Ltd., of Decatur, for appellant.

Howard W. Feldman, of Springfield, for appellee Edward Koerner.

Michael J. Tague, of Franklin, Flynn & Palmer, of Champaign, and Bernard D. Marcus, of Titus, Marcus & Shapira, of Pittsburgh, Pennsylvania, for appellees Horty, Springer & Mattern, P.C., and Linda Haddad.

Gary Mayes and Paul J. Puricelli, both of Thompson & Mitchell, of Belleville, for other appellees.

JUSTICE WELCH delivered the opinion of the court:

Plaintiff Muhammad T. Salaymeh, M.D., commenced this action in the circuit court of Christian County alleging he had been deprived of his operating privileges at St. Vincent Memorial Hospital as the result of a wrongful conspiracy among defendants InterQual, Incorporated, Charles M. Jacobs, Randolph W. Seed, M.D., Horty, Springer & Mattern, P.C., Linda Haddad, St. Vincent Memorial Hospital Corporation, the Adorers of the Blood of Christ, Edward Koerner, and George Freese. The circuit court dismissed the first, second, and fifth counts of plaintiff's five-count complaint with prejudice, whereupon plaintiff moved for voluntary dismissal of the third and fourth counts. The circuit court granted the latter motion, and plaintiff brought the instant appeal.

Plaintiff's ultimate complaint included the following allegations common to all counts: Jacobs and Seed are the president and clinical

medical director, respectively, of InterQual. Haddad, an attorney licensed to practice law in Pennsylvania, is a member of Horty, Springer & Mattern, P.C., a Pittsburgh, Pennsylvania, law firm, none of whose members are licensed to practice law in Illinois. St. Vincent Hospital Corporation operates St. Vincent Memorial Hospital (the hospital) in Taylorville, Illinois. The Adorers of the Blood of Christ is a religious corporation which owns the hospital. Koerner and Freese are chief executive officer and chairman of the board of trustees, respectively, of the hospital. Plaintiff is licensed to practice medicine in Illinois and practices in the specialty of general surgery and in the subspecialty of thoracic surgery. Plaintiff had staff privileges and operating room privileges at the hospital pursuant to a contract between himself and the hospital corporation until his operating room privileges were terminated on August 29, 1984.

In the first count of his complaint, plaintiff alleged all of the defendants engaged in a "Conspiracy to Induce an Interference with Contractual Relations" existing between plaintiff and the hospital regarding plaintiff's operating room privileges. Plaintiff alleged the roles of the various defendants in the conspiracy were as follows: Koerner coordinated the activities of the defendants to accomplish the aims of the conspiracy; the Adorers of the Blood of Christ selected a majority of the board of trustees of the hospital "so that the actions planned could be carried into effect without effective resistance by the Board" and selected Freese as chairman of the board "to facilitate the carrying out of the conspiratorial plan"; Freese used his position to assist Koerner in the conspiracy to interfere with plaintiff's contractual rights by giving Koerner power and authority beyond that which his position with the hospital provided; InterQual, Jacobs, and Seed conducted an investigation of plaintiff's and another physician's medical practices and procedures which was in fact intended to deprive plaintiff of his privileges as a staff physician "by threats and duress"; Haddad and Horty, Springer & Mattern, P.C., either (1) were engaged in the unauthorized practice of law in Illinois or (2) gave tactical counsel and guidance to the other defendants in furtherance of the conspiracy. In the first count plaintiff alleged Koerner was not acting in the interest of the hospital but instead instigated the conspiracy "to further his own personal prejudices and bias against medical doctors of foreign birth and non-Christian religious preference, in furtherance of which he was joined by defendant Freese." The first count alleged the following sequence of events: (1) In April of 1984, at Koerner's suggestion, the hospital tissue committee transmitted tissue samples from two surgery cases to InterQual. (2) InterQual, Jacobs,

and Seed were assigned this evaluation procedure with the understanding that the true aim of the evaluation was to deprive plaintiff of his medical practice at the hospital. (3) Later the evaluation was expanded to include about 100 operative procedures which occurred in one year. (4) After reviewing those cases, InterQual advised its fellow conspirators the review was not turning up sufficient material to support the kind of report required to accomplish the aims of the conspiracy, whereupon, at the request of InterQual "and/or" Haddad, Koerner enhanced the previously submitted records with several selected cases covering a period of four years; InterQual made certain damaging conclusions as its contribution to the conspiracy. (5) Defendants misled the hospital staff into requesting the review and evaluation with the expectation that any resulting reports would be given to the staff for evaluation purposes. (6) InterQual's report was not transmitted to the staff, but instead was transmitted to Freese and Haddad. (7) On August 27, 1984, Koerner demanded plaintiff resign his operating room privileges and warned plaintiff that if plaintiff insisted on a hearing under the hospital bylaws, the result was already determined against him. (8) On August 29, plaintiff received a letter in which Koerner demanded plaintiff either voluntarily resign his operating room privileges by 4 p.m., in which case the InterQual report would be kept confidential, or face summary suspension. Plaintiff alleged defendants' conduct was willful and wanton "so as to deprive defendants of any protection from civil liability" afforded by section 2b of the Medical Practice Act (Ill. Rev. Stat. 1985, ch. 111, par. 4406).

The second and fifth counts of plaintiff's ultimate complaint alleged defendants' "Intentional Interference with Contractual Relations" between plaintiff and the hospital. The second count was based on the same facts alleged in the first count. In the fifth count plaintiff alleged Haddad and Horty, Springer & Mattern, P.C., knew of the hospital's covenant to keep the matters concerning the InterQual report and plaintiff's resignation confidential and that Haddad intentionally caused the hospital to breach this covenant at a November 16, 1985, public meeting.

Defendants argue plaintiff's first count was properly dismissed in its entirety due to the absence of parties legally capable of entering into a conspiracy. We agree. A conspiracy is an agreement or combination of two or more people or entities to do an unlawful act or to do a lawful act by unlawful means. (ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc. (1980), 90 Ill. App. 3d 817, 829, 413 N.E.2d 1299, 1309.) The acts of an agent are considered in

law to be the acts of the principal. Thus a conspiracy does not exist between a principal and an agent or servant. (*John Deere Co. v. Metzler* (1964), 51 Ill. App. 2d 340, 355, 201 N.E.2d 478, 486; *Bonanno v. La Salle & Bureau County R.R. Co.* (1980), 87 Ill. App. 3d 988, 995, 409 N.E.2d 482, 486.) From the facts alleged in plaintiff's complaint it could only be concluded that Haddad and Horty, Springer & Mattern, P.C., and Jacobs, Seed, InterQual, Koerner, and Freese committed the acts complained of as agents of the hospital corporation. Further, there were no facts (as opposed to unsupported conclusions regarding defendants' motives) alleged from which to infer that the acts done by the various defendants as agents of the hospital corporation were done for any reason other than the reasons of the hospital corporation. An actionable wrong cannot be made out by characterizing acts as wrongfully done; the pleading of conclusions alone will not suffice for the factual allegations upon which a cause of action must be based. (*Atwood Vacuum Machine Co. v. Continental Casualty Co.* (1969), 107 Ill. App. 2d 248, 266, 246 N.E.2d 882, 891-92; see *Arlington Heights National Bank v. Arlington Heights Federal Savings & Loan Association* (1967), 37 Ill. 2d 546, 552, 229 N.E.2d 514, 518 (held, malice was not sufficiently pleaded by the plaintiff's alleging that the defendant acted "wrongfully, intentionally and maliciously," without pleading any facts tending to support that conclusion); *Burr v. State Bank* (1951), 344 Ill. App. 332, 339, 100 N.E.2d 773, 776-77 (held, description in complaint of defendant's acts as willful, wanton, and malicious was mere conclusion of pleader and not supported by facts set out in pleading and therefore was not admitted by defendant's motion to dismiss).) As the hospital corporation and its agents or servants could not be liable for civil conspiracy under the facts alleged, it follows that the Adorers of the Blood of Christ as mere owners of the hospital corporation could not be so liable. Dismissal of the conspiracy count as to all defendants was correct.

■ The second and fifth counts alleged defendants' "Intentional Interference with Contractual Relations." The contract on which the second count was based was the same contract alleged in the first count. The fifth count was based on plaintiff's agreement with the hospital to keep matters concerning plaintiff's resignation confidential. Illinois recognizes a cause of action based on improper interference with contract rights. (*Worrick v. Flora* (1971), 133 Ill. App. 2d 755, 757, 272 N.E.2d 708, 710.) However, a corporate employer cannot be guilty of the tort of wrongfully interfering with its own contract. (*Worrick v. Flora* (1971), 133 Ill. App. 2d 755, 759, 272 N.E.2d

708, 711.) Accordingly, the hospital corporation and its owner, the Adorers of the Blood of Christ, were properly dismissed as to the second and fifth counts.

■ Moreover, so long as a fellow employee is acting in accord with the interest of the employer, no personal liability can devolve upon him. (*Worrick v. Flora* (1971), 133 Ill. App. 2d 755, 272 N.E.2d 708.) While the cases refer to such conduct by a fellow employee as privileged, "privilege" as so used does not mean a special power, license, or permission but refers rather to socially and legally approved conduct. (*Worrick v. Flora* (1971), 133 Ill. App. 2d 755, 272 N.E.2d 708.) The welfare of the hospital, its patients, and the community as affected by the quality of medical care available at the hospital were interests which the hospital corporation through its servants and agents had the right if not the duty to safeguard. (See Ill. Rev. Stat. 1985, ch. 111, par. 4406.) So long as the conduct of Koerner and Freese was directed to this lawful end, any personal bitterness and hostility was immaterial. (See *Worrick v. Flora* (1971), 133 Ill. App. 2d 755, 758-59, 272 N.E.2d 708, 710; *Feeley v. McAuliffe* (1948), 335 Ill. App. 99, 104, 80 N.E.2d 373, 375-76.) Plaintiff's complaint alleged defendants were engaged in a common scheme to interfere with plaintiff's rights; if ending plaintiff's operating room privileges was the hospital corporation's "intention" (*i.e.*, the intention of its agents or employees), it follows that Koerner and Freese acting together with the corporation's other employees and agents as a single entity were merely acting in accord with their employer's interest as they were privileged to do. The second and fifth counts were properly dismissed as to Koerner and Freese on that basis.

■ In addition to the foregoing, while plaintiff's complaint alleges the existence of a contract between the hospital corporation and plaintiff by virtue of which plaintiff had operating room privileges at the hospital, plaintiff's complaint does not allege a breach by any defendant of that contract, nor does it allege facts from which such a breach might be inferred. At most, plaintiff alleges he was coerced into relinquishing his contractual rights to peer review, not that he was denied review or unfairly reviewed. To maintain an action for interference with a contractual relationship, a plaintiff must plead a breach of the contract in question. (*Connaughton v. Gertz* (1981), 94 Ill. App. 3d 265, 269, 418 N.E.2d 858, 861; see also *Olsen v. Karwoski* (1979), 68 Ill. App. 3d 1031, 1037, 386 N.E.2d 444, 450 (a civil conspiracy is actionable only where wrongful acts are done in furtherance of the conspiracy).) This omission furnished an independent justification for dismissing the first and second counts of plain-

tiff's complaint.

■ We also agree with the circuit court's conclusion that Haddad and Horty, Springer & Mattern, P.C., were entitled to dismissal as to all counts based on the "attorney good faith advice" privilege recognized in *Schott v. Glover* (1982), 109 Ill. App. 3d 230, 235, 440 N.E.2d 376, 379. ("Public policy requires that an attorney, when acting in his professional capacity, be free to advise his client without fear of personal liability to third persons if the advice later proves to be incorrect.") The basis of the privilege is not the act of licensure but rather the existence of the attorney's fiduciary duty to his client. (See *Schott v. Glover* (1982), 109 Ill. App. 3d 230, 234, 440 N.E.2d 376, 379.) The privilege accorded an attorney when advising his client is not absolute. A plaintiff can state a cause of action for tortious interference with a contract against a third party who is conditionally privileged if the plaintiff can set forth factual allegations from which actual malice may reasonably be said to exist. Such allegations, however, would necessarily include a desire to harm, which is independent of and unrelated to the attorney's desire to protect his client. (109 Ill. App. 3d 230, 235, 440 N.E.2d 376, 380.) A legally sufficient complaint must set forth factual allegations from which actual malice may reasonably be said to exist as opposed to the bare assertion of actual malice. (*Arlington Heights National Bank v. Arlington Heights Federal Savings & Loan Association* (1967), 37 Ill. 2d 546, 552, 229 N.E.2d 514, 518.) Plaintiff failed to allege facts showing the attorneys' intent to harm plaintiff independent of and unrelated to the attorneys' desire to protect their clients. There was no factual allegation from which it might be inferred that Haddad and Horty, Springer & Mattern, P.C., had any interest in or relationship with plaintiff independent of serving their clients. As we note above, an actionable wrong cannot be made out by characterizing the acts as wrongfully done; the pleading of conclusions alone will not suffice for the factual allegations upon which a cause of action must be based. (*Atwood Vacuum Machine Co. v. Continental Casualty Co.* (1969), 107 Ill. App. 2d 248, 266, 246 N.E.2d 882, 891-92; see *Arlington Heights National Bank v. Arlington Heights Federal Savings & Loan Association* (1967), 37 Ill. 2d 546, 552, 229 N.E.2d 514, 518.) We conclude this privilege justified dismissing Haddad and Horty, Springer & Mattern, P.C., on all three counts appealed.

■ What we have concluded above leaves only InterQual and its employees Seed and Jacobs to be considered and only as to the fifth count. The fifth count alleges no actions or omissions on the part of those defendants as to the alleged breach of the confidentiality agree-

ment between the hospital corporation and plaintiff. The fifth count was properly dismissed as to InterQual, Seed, and Jacobs.

We find sufficient justification for the dismissal of this complaint in the issues discussed above and need not discuss the remaining contentions raised. The judgment of the circuit court of Christian County is affirmed.

Affirmed.

KARNS, P.J., and KASSERMAN, J., concur.