RICHARD A. SMALL, Plaintiff-Appellant, v. PAUL SUSSMAN *et al.*, Defendants-Appellees.

First District (6th Division)    No. 1—98—1113

———

Opinion filed June 30, 1999.

Plotkin, Jacobs & Orlofsky, Ltd., of Chicago (Jonah Orlofsky and Karl Leinberger, of counsel), for appellant.

Katten Muchin & Zavis, of Chicago (Bonita L. Stone and Paul A. Haskins, of counsel), for appellees.

JUSTICE ZWICK delivered the opinion of the court:

Plaintiff, Richard Small, was a minority shareholder in defendant Day Surgicenters, Inc. (DSI). Defendant Paul Sussman was DSI's principal shareholder and was alleged in plaintiff's amended complaint to have controlled DSI as its dominant director and officer. The question presented in this appeal is whether the circuit court properly dismissed, pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1996)), plaintiff's various claims against the defendants.

Small's complaint alleged that DSI is an Illinois corporation founded in 1989. The corporation owned and operated two outpatient surgical centers in Chicago and Oak Brook. Defendant Sussman was the majority shareholder of DSI. Small was a DSI shareholder who, at one time, owned as much as 10% of DSI's shares.

While the complaint alleges a series of wrongdoing on the part of

DSI and Sussman, this appeal focuses on two primary assertions that form the nucleus of Small's claims. First, Small alleged that there was a waste of corporate assets through improper payments made by DSI to outside businesses owned by Sussman. In particular, Small alleged that Sussman, in addition to his controlling share in DSI, held an ownership interest in a dozen or more separate corporations that transacted business with DSI. It is alleged that those corporations were paid by DSI for services without value, such as for brokering equipment purchases. Small also alleged that Sussman paid excessive amounts for minimal services, the purpose of which was to funnel assets to himself. Small alleged that he was injured, individually as a DSI shareholder, by diversion of DSI assets to other entities solely for Sussman's benefit.

Second, Small alleged that DSI and Sussman improperly acted to eliminate Small's ownership in order to reserve for Sussman the fruits of a profitable sale of DSI's stock to Premier Ambulatory Systems, Inc. (PASI), a California corporation. Sussman was alleged to have done so by (1) making false statements in connection with a 1992 recission letter and a 1994 redemption letter in which DSI offered to buy Small's shares for less than their fair value, (2) improperly reducing DSI's board of directors from three directors to one, which allowed Sussman to improperly dominate DSI's management and (3) causing the corporation to undertake a reverse stock split creating one new share for every 200 shares of outstanding DSI stock. Following the reverse stock split, DSI was alleged to have canceled all fractional shares and offered settlement to the fractional shareholders in the form of a cash payment. This was done in preparation of the sale of DSI to PASI. Small alleged that Sussman's conduct in this regard was part of an unlawful scheme to defraud him of his rightful ownership share in DSI. Small also alleged that Sussman's acts of unlawfully withdrawing assets from DSI over time resulted in Small becoming DSI's sole remaining shareholder.

■ As we noted, defendants' motion to dismiss Small's amended complaint was brought pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1996)). Under that section, a trial court should dismiss a complaint only when it clearly appears that no set of facts that would entitle plaintiff to relief could be proved under the pleadings. *Ogle v. Fuiten*, 102 Ill. 2d 356, 360-61, 466 N.E.2d 224 (1984). A section 2—615 motion admits all well-pleaded facts but not conclusions of law or factual conclusions unsupported by allegations of specific facts. *Talbert v. Home Savings Bank of America, F.A.*, 265 Ill. App. 3d 376, 379, 638 N.E.2d 354 (1994). We review the granting of a section 2—615 motion *de novo. Schiffner v. Motorola, Inc.*, 297 Ill. App. 3d 1099, 1103, 697 N.E.2d 868 (1998).

■ In this case, the circuit court properly dismissed Small's amended complaint. As the court recognized in making its order, Illinois law is well settled that a shareholder seeking relief for an injury to the corporation, rather than a direct injury to the shareholder himself, must bring his suit derivatively on behalf of the corporation:

> " 'A stockholder of a corporation does not acquire standing to maintain an action in his own right, as a shareholder, when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists in the diminution in value of his corporate shares resulting from the impairment of corporate assets. In this situation, it has been consistently held that the primary wrong is to the corporate body and, accordingly, that the shareholder, experiencing no direct harm, possesses no primary right to sue.' " *Mann v. Kemper Financial Cos.*, 247 Ill. App. 3d 966, 975-76, 618 N.E.2d 317 (1992), quoting *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 732 (3d Cir. 1970).

See also *Lower v. Lanark Mutual Fire Insurance Co.*, 151 Ill. App. 3d 471, 473, 502 N.E.2d 838 (1986) ("When an officer, director or controlling shareholder breaches a duty to the corporation, a shareholder has no standing to bring a civil action at law against faithless directors and managers because the corporation and not the shareholder suffered the injury"); *Poliquin v. Sapp*, 72 Ill. App. 3d 477, 480, 390 N.E.2d 974 (1979) (because a breach of fiduciary duty by directors alleged injury to the corporation, shareholders did not have a right to recover damages in their own names).

■ Small argues that an exception should be drawn in Illinois allowing minority shareholders the right to bring a direct action against co-shareholders when the corporation is closely held. Small relies on a proposal by the American Law Institute's (ALI) Principals of Corporate Governance: Analysis and Recommendations, § 7.01(d) (1992). The proposal states, "the court in its discretion may treat an action raising derivative claims as a direct action." See *Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158, 161-62 (7th Cir. 1996) (discussing the proposal). However, as defendants argue, no Illinois cases have adopted the rule of law proposed by the ALI. Most states still adhere to the traditional rule. See *Frank*, 83 F.3d at 162. Nor has the General Assembly adopted the ALI's proposal as part of our Business Corporation Act of 1983 (see 805 ILCS 5/1.01 *et seq.* (West 1996)). In the absence of any palpable indication that such a proposal is particularly necessary or wise, we choose to follow the historical rule that it is the corporation as a legal entity that must seek redress when all shareholders are injured uniformly.

The alleged diversion of DSI profits to other entities is a classic

injury to the corporation. In his complaint, Small treats Sussman and DSI as if they are one and the same entity. The law controlling whether an action is derivative or direct, however, requires a strict focus on the nature of the alleged injury, *i.e.*, whether it is to the corporation or to the individual shareholder that injury has been done. See *Weil v. Northwest Industries, Inc.*, 168 Ill. App. 3d 1, 5, 522 N.E.2d 172 (1988) (the court must preliminarily determine if the gravamen of the pleadings states an injury to the plaintiff upon an individual claim, as distinguished from an injury which indirectly affects the shareholder or affects shareholders as a whole).

With respect to the claim that Sussman wasted DSI assets by diverting them to his outside businesses or to himself, Small stands in the same shoes as the plaintiffs in the *Frank* case who complained that the only other primary shareholder diverted all of the company's assets to his other business, for the sole purpose of excluding the plaintiffs. *Frank*, 83 F.3d at 159. Other cases are in accord. See *Cashman v. Coopers & Lybrand*, 251 Ill. App. 3d 730, 736, 623 N.E.2d 907 (1993) (when "real damage suffered by plaintiffs *** is that *** stock becomes worthless due to *** alleged mistakes," claim is derivative); *Borgsmiller v. Burroughs*, 187 Ill. App. 3d 1, 7, 542 N.E.2d 1281 (1989); *In re Possession & Control of Knight*, 60 Ill. App. 2d 457, 460, 208 N.E.2d 679 (1965). See also *Kramer v. Western Pacific Industries, Inc.*, 546 A.2d 348, 353 (Del. 1988) ("claim of mismanagement resulting in corporate waste, if proven, represents a direct wrong to the corporation *** [and] is entirely derivative in nature"). Such a diversion would affect a company's performance generally and would affect all shareholders only indirectly.

That Small has pursued an improper individual remedy is underscored by the fact that the complaint demands that Small alone recover *all* alleged damages caused by the defendants' conduct. This ignores the fact that the corporation's records, by Small's own admission, shows him to be only a 10% shareholder. Small's argument that Sussman's self-dealings should be treated as withdrawals by him of his capital from the corporation, as opposed to the payment of illegal dividends, is unsupported by cited legal precedent—and is not particularly logical. The fact that Small has conceded DSI had been wildly profitable under Sussman's direction makes Small's suggestion in this regard implausible.

Neither can Small prevail by arguing that he has an individual claim based upon injury from the freezeout merger that resulted in the termination of his stock position. Clearly, the effect of a freezeout merger is not a cognizable legal injury of any sort. The type of freezeout executed by DSI (a reverse stock split and elimination of

fractional shares) is authorized by the Illinois Business Corporation Act of 1983. See 805 ILCS 5/11.05 (West 1996) (relaxing the requirement for mergers). Consistent with this statutory authorization, the courts of this state recognize the legality of such mergers. See *Teschner v. Chicago Title & Trust Co.*, 59 Ill. 2d 452, 458, 322 N.E.2d 54 (1974).

Small erroneously argues that, even if the only cognizable injury alleged is derivative, he must be able to bring a direct, individual lawsuit because he is a former shareholder and DSI has been sold. Small reasons that a derivative suit in the circumstance could only generate windfall damages for the new owners.

Small's argument squarely conflicts with Illinois law. Again, if the injury alleged is to the corporation, the lawsuit must be brought on the corporation's behalf. *Mann*, 247 Ill. App. 3d at 975. The fact that the corporation has been sold and has become part of some other entity does not, as a matter of Illinois law, change the derivative requirement. See, *e.g.*, *Poliquin v. Sapp*, 72 Ill. App. 3d 477, 481, 390 N.E.2d 974 (1979) (dissolution of corporation prior to commencement of an action against erring directors does not serve to create an individual right of action in shareholders, where the action is representative in character).

Small further argues that his complaint must be a viable direct action because otherwise he would be denied his constitutional right to a remedy. The rights and remedies clause of the Illinois Constitution is "an expression of philosophy and not a mandate that a 'certain remedy' be provided in any specific form." *Partin v. St. Francis Hospital*, 296 Ill. App. 3d 220, 228, 694 N.E.2d 574 (1998). The provision does not come into play merely "because noncomplying actions may suffer dismissal." *DeLuna v. St. Elizabeth's Hospital*, 147 Ill. 2d 57, 73, 588 N.E.2d 1139 (1992).

We find the circuit court also correctly dismissed the breach of fiduciary duty claim as to DSI on the independent grounds that a corporation—as distinct from its officers and directors—does not owe a duty to shareholders. That holding is black-letter law in Illinois. *Doherty v. Kahn*, 289 Ill. App. 3d 544, 560, 682 N.E.2d 163 (1997); *Wencordic Enterprises, Inc. v. Berenson*, 158 Ill. App. 3d 913, 918, 511 N.E.2d 907 (1987). Cases such as *Holmes v. Birtman Electric Co.*, 22 Ill. App. 2d 72, 159 N.E.2d 272 (1959), *rev'd*, 18 Ill. 2d 554, 165 N.E.2d 261 (1960), address only the narrow context of the corporation's duty with respect to stock transfers, facts that are not relevant to the issues here.

■ In count II, Small alleges that DSI participated in and assisted Sussman's fiduciary breach (and vice versa). This allegation, however,

is a legal impossibility. Corporations can only act through their agents. *Templeton v. First National Bank*, 47 Ill. App. 3d 443, 447, 362 N.E.2d 33 (1977). Therefore, a corporation is incapable of conspiring with itself, as the circuit court properly found in dismissing with prejudice the conspiracy count in Small's original complaint. *Salaymeh v. Interqual, Inc.*, 155 Ill. App. 3d 1040, 1043, 508 N.E.2d 1155 (1987). Although Small uses the term "participating and assisting" in place of "conspiracy," the identical principle disposes of the claim. As a matter of law, a corporation can no more "assist" itself than it can conspire with itself. See *Bilut v. Northwestern University*, 296 Ill. App. 3d 42, 692 N.E.2d 1327 (1998).

■ The fraud count of Small's complaint was also correctly dismissed. The count alleged by Small fails to articulate the requisite element of reliance and otherwise fails to allege fraud with particularity. To plead a legally sufficient common law fraud claim, a plaintiff must allege that: (1) defendant made a statement; (2) of a material nature; (3) which was untrue; and (4) was known by defendant to be untrue, or was made in culpable ignorance of its truth or falsity; (5) was made for the purpose of inducing reliance by the plaintiff; (6) was actually relied on by the plaintiff; and (7) resulted in the plaintiff's injury. *Johnson v. George J. Ball, Inc.*, 248 Ill. App. 3d 859, 867, 617 N.E.2d 1355 (1993). Furthermore, "[a] complaint alleging fraud must set out the facts with specificity, particularity and certainty under Illinois procedural law governing pleadings." *Boatwright v. Delott*, 267 Ill. App. 3d 916, 919, 642 N.E.2d 875 (1994). Conclusionary allegations will not substitute for well-pled facts. *Hume & Liechty Veterinary Associates v. Hodes*, 259 Ill. App. 3d 367, 369, 632 N.E.2d 46 (1994).

Small claims that DSI and Sussman made false statements of material fact in the "rescission offer, the redemption offer, the valuation action and other matters set forth in detail above," that Small "relied upon the truth of those statements to his detriment," and that Small was injured as a result of this fraud "in amounts totaling millions of dollars." Such generalized pleadings are defective as a matter of law, particularly in that Small's complaint establishes that he did not rely upon the recission offer and redemption offer to sell his shares.

■ Small also attempts to allege "constructive fraud," but this attempt is no more successful. Constructive fraud is defined as "any act, statement or omission which amounts to positive fraud or which is construed as fraud by the courts because of its detrimental effect upon public interests and public or private confidence." *In re Estate of Neprozatis*, 62 Ill. App. 3d 563, 568, 378 N.E.2d 1345 (1978). As with actual fraud, however, plaintiff must sufficiently plead detrimental reliance in order to state a cognizable claim. See *Gary-Wheaton Bank*

*v. Burt*, 104 Ill. App. 3d 767, 433 N.E.2d 315 (1982). Nor can the constructive fraud claim be salvaged by asserting that part of the fraud was Sussman's and DSI's sale of DSI stock to PASI. First, Small fails to allege any false statement or fraudulent concealment by defendants in connection with the freezeout merger. Second, that sale was legally accomplished through a reverse stock split and freezeout merger, permitted by the Business Corporation Act. Clearly, such an action cannot have a "detrimental effect upon public interest or confidence."

■ Small's complaint also attempts to state a claim for a constructive trust. "A constructive trust is generally imposed in two situations: first, where actual or constructive fraud is considered as equitable grounds for raising the trust and, second, where there is a fiduciary duty and a subsequent breach of that duty." *Suttles v. Vogel*, 126 Ill. 2d 186, 193, 533 N.E.2d 901 (1988), citing *Perry v. Wyeth*, 25 Ill. 2d 250, 184 N.E.2d 861 (1962). Because Small has not adequately pled actual or constructive fraud, he appears to base his claim for constructive trust on Sussman and DSI's purported breach of fiduciary duty. As discussed above, DSI owes no fiduciary duty to its shareholders.

Significantly, the constructive trust claim also is not sustainable, as to either defendant, because Small's complaint seeks monetary damages exclusively. When legal damages are an adequate remedy, the imposition of a constructive trust is inappropriate. See *Hill v. Names & Addresses, Inc.*, 212 Ill. App. 3d 1065, 1082, 571 N.E.2d 1085 (1991); *Hagshenas v. Gaylord*, 199 Ill. App. 3d 60, 78, 557 N.E.2d 316 (1990).

■ Small's count alleging civil conspiracy was also properly dismissed. In order to state a claim for civil conspiracy, a plaintiff must allege an "agreement or combination of two or more people or entities to do an unlawful act or to do a lawful act by unlawful means." *Salaymeh v. Interqual, Inc.*, 155 Ill. App. 3d 1040, 1043, 508 N.E.2d 1155 (1987). It is axiomatic that a corporation can act only through its agents. *Templeton*, 47 Ill. App. 3d at 447. Consequently, there can be no civil conspiracy between a corporation and its agents. See, *e.g.*, *Shrout v. McDonald's System, Inc.*, 90 Ill. App. 2d 60, 234 N.E.2d 45 (1967) (abstract of op.). The acts of Sussman, as an agent of DSI, are considered in law to be the acts of DSI, the principal. Thus, a conspiracy cannot exist between the two.

■ Nor does Small's complaint adequately allege a claim for conversion. A proper complaint alleging conversion sets forth facts showing: (1) an unauthorized and wrongful assumption of control, dominion, or ownership by a defendant over a plaintiff's personalty; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property; and (4) a demand for possession of the

property. *Voutiritsas v. Intercounty Title Co.*, 279 Ill. App. 3d 170, 186, 664 N.E.2d 170 (1996). Small has failed to adequately plead any of the four elements of conversion.

First, there was no unauthorized assumption of control of Small's stock. He had no permanent entitlement to DSI shareholder status, and the freezeout merger was authorized by Illinois statute. Second, Small had no immediate right to possession of the property, nor indeed any right in the property, once the freezeout was effected. All he was entitled to pursuant to the Act was the stock's "fair value"—and the valuation action currently pending in the circuit court is designed to assure this result. Third, Small nowhere alleges that he ever made demand for repossession of his DSI stock. Rather, what he always demanded was more money. Thus, the conversion claim was deficient in multiple respects and was properly dismissed.

Lastly, Small's allegations of tortious interferences with his prospective economic advantage were properly dismissed. To state such a claim it must be alleged: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) an intentional and malicious interference inducing or causing a breach of termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship has been disrupted. *Ancraft Products Co. v. Universal Oil Products Co.*, 84 Ill. App. 3d 836, 844, 405 N.E.2d 1162 (1980).

As a former minority shareholder in DSI, Small had no valid business relationship or expectancy with PASI. Nowhere in his complaint does Small allege that he and any PASI representative ever had any contact with one another which could remotely establish that PASI intended to purchase Small's interest in DSI directly from him. Indeed, there is nothing in Small's complaint that would indicate that Small had even heard of PASI until Sussman, as controlling shareholder of DSI, began to negotiate the sale of DSI to PASI. The only "expectancy" that Small could possibly have as a DSI minority shareholder would be to receive the fair value of his shares in DSI from the sale to PASI, as set forth in the Business Corporation Act, section 11.70(f). 805 ILCS 5/11.70(f) (West 1996). An appraisal proceeding is pending in the chancery court for exactly this purpose.

Moreover, even if we were to find that Small somehow alleged the existence of a valid business expectancy, he has not pled the requisite tortious conduct by DSI or Sussman which caused PASI to discontinue some prospective relationship with Small. Small merely alleges that Sussman and DSI acted "intentionally or with reckless indifference" by obstructing Small from retaining his stock or from selling his interest in DSI to PASI. This allegation does not rise to the level of the

"intentional and malicious interference" necessary to establish a *prima facie* case of tortious interference with prospective economic advantage. *Disher v. Fulgoni*, 161 Ill. App. 3d 1, 24, 514 N.E.2d 767 (1987). In this context, "malicious" means intentional and without justification. *Reuben H. Donnelley Corp. v. Brauer*, 275 Ill. App. 3d 300, 312-13, 655 N.E.2d 1162 (1995). Small's claim does not allege that DSI lacked a valid business purpose in pursuing its merger discussions with PASI.

■ Finally, we address Small's argument that the valuation process cannot remedy the wrongs done to the corporation because the proceedings will focus narrowly upon the value of the DSI shares at the precise time of the merger. At oral argument Small argued strenuously that Sussman had committed "the perfect crime" in that once the freezeout merger was final, no one would have standing to bring a claim against Sussman for his breaches of fiduciary duty.

Because the valuation proceeding is still pending in the chancery court, we will not discuss at length the difficult question of whether Sussman's alleged corporate mismanagement should affect Small's valuation. We do feel compelled to point out, however, that the valuation action created by section 11.70(f) of the Business Corporation Act is meant to have a broad sweep in achieving its objective of fairness in setting the price at which a departing shareholder is to be bought out. Support for our view on this matter is set out plainly in section 11.70(g) (805 ILCS 5/11.70(g) (West 1996)) in which the court's jurisdiction in setting fair value is made "plenary and exclusive." To this end the court is given the power to appoint appraisers to receive evidence and assess costs against either a dissenting shareholder or the corporation if either party has suggested a buyout price which "materially exceeds" the fair value as determined by the court. 805 ILCS 5/11.70(g) (West 1996). Although section 11.70(j) provides that "fair value" means the "value of the shares immediately before the consummation of the corporate action to which the dissenter objects" (805 ILCS 5/11.70(j)(1) (West 1996)), the value of the corporation on this date must necessarily include the value of any causes of action which the corporation could bring against its directors and officers for their breaches of fiduciary duty owed to the corporation. Thus, a shareholder who can establish that the corporation, on the day of a freezeout merger, had a significant claim against one of the corporate directors should find it possible to argue for an increase in the corporation's value over what the corporation would be worth if the cause of action did not exist. In such a circumstance, where the value of such cause of action was substantial, the court would necessarily need to assess the impact of the claim amidst all other relevant factors in setting a fair price on the dissenter's shares.

In any event, we find that the claims raised in Small's amended complaint were properly dismissed for the reasons set out above. Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BELL, P.J., and QUINN, J., concur.