2023 IL App (1st) 211327

SECOND DIVISION
August 1, 2023

No. 1-21-1327

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| FUZZY MAIAVA TUNA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | 2019 L 006619 |
| | ) | |
| FLOYD A. WISNER, ALEXANDRA M WISNER, and | ) | Honorable |
| WISNER LAW FIRM, P.C., | ) | Margaret A. Brennan, |
| | ) | Judge Presiding |
| Defendant-Appellees. | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment and opinion.

**OPINION**

¶ 1    New Zealand has a no-fault personal injury payment scheme that would send shivers down the spine of plaintiffs' attorneys in America. If a person is hurt in New Zealand, or a New Zealander is injured elsewhere in the world, that country's Accident Compensation Act (Accident Compensation Act 2001 (N.Z.)) reimburses the injured party without requiring that person to prove fault. These payments come from a government-overseen corporation tasked with distributing compensation to an injured party.

¶ 2    In exchange for this no-fault scheme, New Zealand bars injured persons from filing tort actions in New Zealand courts seeking compensatory damages. In essence, New Zealand has

abolished all common-law claims for compensatory damages arising from personal injuries and replaced it with a no-fault compensation scheme.

¶ 3    Fuzzy Tuna, plaintiff here, is a New Zealand citizen. In 2010, he was working for Qantas Airlines as a flight attendant on a flight from Singapore to Perth, Australia. While the plane was in the air, it unexpectedly pitched toward the ground twice. Though it thankfully did not crash, many of the passengers and crew—including plaintiff—were violently tossed about the cabin. Plaintiff suffered significant injuries and has been unable to work since the accident.

¶ 4    As a New Zealander, plaintiff qualified for reimbursement and has received money from the Accident Compensation Act. But he also filed a personal injury lawsuit in Cook County, Illinois against several companies he believed were responsible for the accident, seeking compensatory damages. That case was eventually dismissed, as the circuit court ruled that the New Zealand ban on suing for compensatory damages applied and barred plaintiff's claim.

¶ 5    Plaintiff's attorneys at the time, now defendants in this legal malpractice case, filed a notice of appeal in this court to challenge that ruling but later dismissed it and tried to resurrect the claim in the circuit court. Ultimately, that did not succeed, and plaintiff found himself with an adverse ruling in the circuit court and no right to appeal it.

¶ 6    So plaintiff filed this malpractice action against his lawyers, defendants here, for dismissing an appeal that, in his mind, would have been meritorious and which would have allowed him to return to circuit court to successfully prosecute his claim.

¶ 7    The circuit court here, in the malpractice action, ruled that New Zealand law was, indeed, the governing law in the underlying action and did, indeed, bar that underlying action. Thus, any negligence that defendants may have committed in their representation of plaintiff did not lead to damages, because he would have lost the appeal even had one been prosecuted.

¶ 8    Plaintiff appeals. He claims the court did not properly conduct the choice-of-law analysis. He finds no conflict between New Zealand law and Illinois law on the relevant question.

¶ 9    For the reasons that follow, we affirm the judgment of the circuit court, because we agree that a conflict exists between New Zealand law and Illinois law. We do not delve further into the choice-of-law analysis to decide which jurisdiction's governing law would have ultimately applied, because plaintiff has limited his appeal only to the question of whether a conflict existed and has not otherwise argued the issue. Given that we agree with the circuit court on the limited question raised in this appeal, we have no basis to reverse its judgment.

¶ 10                    BACKGROUND

¶ 11   Like many legal malpractice actions, this one involves a "case within a case." The alleged legal malpractice concerns a lawsuit filed in the circuit court of Cook County on behalf of plaintiff here, Fuzzy Maiava Tuna, who was represented by defendants here, Floyd A. Wisner, Alexandra M. Wisner, and the Wisner Law Firm, P.C. (collectively, the Wisner defendants). See *Tuna v. Airbus, S.A.S.*, 2017 IL App (1st) 153645. We refer to this underlying action as "the *Airbus* action." Our factual background understandably revolves in large part around the history of that lawsuit.

¶ 12                    I. The *Airbus* Action

¶ 13   Plaintiff was a flight attendant on a Qantas flight flying between Singapore and Perth, Australia, on October 7, 2008. While the plane was in the air somewhere over the Indian Ocean, it suddenly pitched down twice, throwing passengers and crew (including plaintiff) throughout the cabin. Plaintiff, a permanent resident and citizen of New Zealand, was severely injured and has not been able to work since the accident.

¶ 14    Plaintiff and several others filed actions for negligence and products liability against various defendants in the circuit court of Cook County. One of those defendants, Motorola, Inc., was an Illinois defendant. The other defendants included Airbus, S.A.S, a French company that built the plane involved in the accident, and California-based Northrop Grumman Guidance and Electronics Company (Northrop Grumman), which designed the aircraft's air data inertial reference unit that may have helped cause the sudden drop. Motorola and the other defendants were eventually dismissed from the suit, leaving just Airbus and Northrop Grumman.

¶ 15    Both Airbus and Northrop Grumman acquiesced to jurisdiction in Illinois. They did not contest liability but moved for summary judgment on the issue of damages. They argued that New Zealand substantive law governed the issue of damages and that, while Illinois permitted recovery for a wide array of damages in a personal injury action, New Zealand's Accident Compensation Act, a no-fault compensation system, barred injured plaintiffs from suing for compensatory damages. (More on this later.)

¶ 16    In support of their claim that New Zealand law, not that of Illinois, governed the substantive issue of damages, Airbus and Northrup Grumman attached several affidavits from attorneys and legal scholars in New Zealand. Plaintiff, represented by the Wisner defendants, argued that there was no conflict in the law because the New Zealand statute in question only applied to actions filed in New Zealand. Plaintiff also attached affidavits from two New Zealand attorneys who concluded that the New Zealand law in question did not apply to proceedings brought in courts outside of New Zealand, such as Cook County, Illinois.

¶ 17    The circuit court granted Airbus's and Northrup Grumman's motion to apply New Zealand law and entered summary judgment in their favor, finding that New Zealand law barred plaintiff's claim for compensatory damages. The court also found no just reason to delay

enforcement or appeal of that ruling under Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010). (There were other claims still pending in the case.) Plaintiff's attorneys, the Wisner defendants, filed a timely notice of appeal with this court.

¶ 18    On April 2, 2015, and while the appeal was pending in this court, the circuit court *sua sponte* vacated the summary judgment order and requested that the parties provide additional briefing on the choice-of-law issue. Four days later and in the circuit court, plaintiff's attorneys moved to voluntarily dismiss their appeal. See Ill. S. Ct. R. 309 (eff. Feb. 1, 1981) (circuit court may dismiss appeal before record on appeal has been filed).

¶ 19    Airbus and Northrup Grumman objected, arguing that the court's April 2, 2015 order was void because the notice of appeal that plaintiffs had filed divested the circuit court of jurisdiction. See, *e.g.*, *People v. Bounds*, 182 Ill. 2d 1, 3 (1998) ("When the notice of appeal is filed, the appellate court's jurisdiction attaches *instanter*, and the cause is beyond the jurisdiction of the trial court."). Airbus and Northrup Grumman issued what would prove to be a prophetic warning, saying that if "Plaintiffs voluntarily dismiss their appeal, they cannot then file a post-judgment motion to vacate, nor can the Court grant such relief." They also argued that plaintiff would not be able to revest the court with jurisdiction or qualify for relief using section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2014)), which allows the court, in certain situations, to vacate or modify final orders or judgments more than 30 days after entry.

¶ 20    The circuit court granted plaintiff's motion to dismiss the appeal, but because of a filing error, that order never reached the appellate court; instead, we dismissed it for want of prosecution a few months later. *Tuna*, 2017 IL App (1st) 153645, ¶ 13. Either way, the appeal was dismissed. The circuit court then realized it did not have jurisdiction on April 2, 2015, to vacate the summary judgment. With the summary judgment order final, and the appeal of that

order dismissed, the circuit court recommended that plaintiff file a section 2-1401 petition to attempt to revive the claim. See 735 ILCS 5/2-1401 (West 2014) (allowing attack on final judgment more than 30 days after entry).

¶ 21    Plaintiff, still through his attorneys, the Wisner defendants, filed that section 2-1401 petition. He attached a letter from Aric Shakur, a legal clerk working for the Accident Compensation Corporation, the government agency responsible for paying accident victims who qualify for New Zealand's compensation scheme. Shakur averred that the relevant New Zealand law "does not prevent claimants from bringing proceedings in overseas courts." Airbus and Northrup Grumman objected to the petition, arguing that Shakur's letter did not address Illinois choice-of-law rules and that Shakur, a law clerk, was not a licensed attorney in New Zealand.

¶ 22    The circuit court denied the section 2-1401 petition, concluding that Shakur's letter would not have changed the outcome of the previous decision; his letter merely summarized what the court had already considered in the affidavits from the other attorneys, and Shakur, as a clerk, would not be qualified as an expert on New Zealand law. Thus, plaintiff had not presented any new evidence that he had a meritorious claim. Plaintiff, still through the Wisner defendants, appealed to this court, and a different panel affirmed the denial of the section 2-1401 petition. See *Tuna*, 2017 IL App (1st) 153645, ¶¶ 38-39.

¶ 23                            II. The Present Action

¶ 24    His original claim now dead, plaintiff hired new attorneys who filed this legal malpractice claim against the Wisner defendants. Plaintiff alleged that defendants were negligent in the underlying action at both the trial and appellate level by having failed to support their argument that New Zealand law did not bar the *Airbus* action and prematurely (and, it turns out, irrevocably) dismissing his initial appeal from the summary judgment order.

¶ 25    Defendants later moved for summary judgment, arguing that New Zealand law did, in fact, bar the *Airbus* action, and thus neither additional supporting material nor an appeal would have led to a successful result for plaintiff. In legal terms, they argued that any negligence they may have committed was not the proximate cause of plaintiff's injury—his defeat in the *Airbus* action—because his defeat in *Airbus* was based on proper legal grounds.

¶ 26    More specifically, defendants argued that (1) there was a conflict between the laws of New Zealand and Illinois; (2) Illinois's choice-of-law rules favored the application of New Zealand law; (3) New Zealand law barred any claim for compensatory damages in the *Airbus* action; and thus (4) plaintiff suffered no damages as a result of defendants' representation, even if it was negligent. In support, defendants attached an affidavit from John Billington, a New Zealand barrister, who opined that New Zealand law barred the action, and that a recent New Zealand court decision, *McGougan v. Depuy International Ltd.*, [2018] NZCA 91, [2018] 2 NZLR 916 (N.Z.), settled any outstanding questions on the issue.

¶ 27    In response, plaintiff essentially reiterated what the Wisner defendants, when they were representing him in the *Airbus* action, argued. Namely, the New Zealand statute at issue only barred actions for compensatory damages in a *New Zealand* court, not a court in the United States. So there was no conflict between the substantive laws of New Zealand law and Illinois— and thus no need for the court to even entertain a choice-of-law analysis.

¶ 28     In support, plaintiff attached affidavits from some of the same experts he used in the original action, who concluded that the New Zealand statutory bar did not apply to courts outside of New Zealand. Absent a conflict, plaintiff argued, Illinois law would apply. Since the Wisner defendants had failed to successfully make that argument and incorrectly dismissed the appeal, their negligence prevented plaintiff from successfully prevailing in the underlying action.

¶ 29    The circuit court granted summary judgment to defendants, concluding that New Zealand law governed the *Airbus* action and barred plaintiff's claim for compensatory damages. The court found *McGougan* and defendants' experts more persuasive on the choice-of-law question law than plaintiff's proof. The court did not explicitly address whether New Zealand had the most significant relationship to the case, only that its law conflicted with Illinois, and that it would apply New Zealand law. Thus, because New Zealand law governed the *Airbus* action and barred plaintiff's claim for compensatory damages, plaintiff could not prove that any negligence committed by the Wisner defendants proximately caused damages of any kind.

¶ 30                                    ANALYSIS

¶ 31    Plaintiff challenges the grant of summary judgment. Summary judgment is appropriate where " 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Suburban Real Estate Services, Inc. v. Carlson*, 2022 IL 126935, ¶ 15 (quoting 735 ILCS 5/2-1005(c) (West 2018)). Our review is *de novo*. *Id.*

¶ 32                                        I

¶ 33    As noted, a legal malpractice action involving underlying litigation, as here, involves a "case within a case," whereby a client complains that it would have won the underlying action but for its attorney's negligence in litigating that action. *Governmental Interinsurance Exchange v. Judge*, 221 Ill. 2d 195, 200 (2006). To succeed, the plaintiff must show that an attorney's negligent representation proximately caused the plaintiff damages in that the result of the underlying litigation was unsatisfactory—either the plaintiff was forced to pay money or, as here, the plaintiff did not obtain a recovery. *Id.* Here, plaintiff claims that, absent his lawyers'

malpractice in the underlying *Airbus* action, he would have won that case—and his "damages" in this action are the award he would have and should have received in the *Airbus* action.

¶ 34    But if the plaintiff cannot show that his lawyers' negligence was the proximate cause of his unsatisfactory outcome—for example, because that underlying case was unwinnable—the malpractice claim fails. *Id.* at 199. That, in essence, is the Wisner defendants' position: the *Airbus* action was unwinnable, because the substantive law of New Zealand would have governed and would have barred a claim for compensatory damages in the *Airbus* action. Thus, any negligence they may have committed in their representation of plaintiff was not a proximate cause of any damages at all.

¶ 35    The circuit court agreed with defendants. So the question is whether the circuit court properly determined that New Zealand law was the governing substantive law of the *Airbus* action and, if so, whether that conclusion compelled summary judgment in favor of defendants.

¶ 36    In our analysis, we must obviously consider laws passed in New Zealand. But we may not take judicial notice of the law of foreign countries. 735 ILCS 5/8-1007 (West 2022); *Bangaly v. Baggiani*, 2014 IL App (1st) 123760, ¶ 145. The laws of foreign countries must be pleaded and proved like any other fact. *Baggiani*, 2014 IL App (1st) 123760, ¶ 145. That said, the interpretation of a foreign law is one for the court, not a jury. 735 ILCS 5/8-1007 (West 2022). When the parties dispute the interpretation of a foreign law, expert testimony and other authorities on the meaning and interpretation of that law is helpful and encouraged. *Atwood Vacuum Machine Co. v. Continental Casualty Co. of Chicago*, 107 Ill. App. 2d 248, 263 (1969).

¶ 37                                              II

¶ 38    Based on the evidence in the record—case law provided, affidavits submitted, and the statutes themselves—we now proceed to a brief discussion of New Zealand law on this issue.

¶ 39    New Zealand has taken a very different approach to making injured accident victims whole, embodied in its Accident Compensation Act. The Accident Compensation Act (Accident Compensation Act 1972 (N.Z.)) was borne from a "Royal Commission" report, released in 1967, which concluded that, under the existing common law system of recovering damages through tort actions, "only a small number of accident victims received adequate or any compensation." *McGougan*, [2018] NZCA 91, [2018] 2 NZLR 916 at [26].

¶ 40    To replace this so-called "lottery," the commission recommended that New Zealand adopt a no-fault scheme, to which citizens and corporations in New Zealand would contribute, that would "channel much of those funds to victims, rather than participants in the common law system such as insurers and lawyers." *Id*. The crux of the report was that "the Court action based on fault should now be abolished in respect of all cases of personal injury, no matter how occurring." (Emphases omitted.) *Id.*

¶ 41    From this, in 1972, the Accident Compensation Act was born, and it has been continued by a succession of statutes, most recently in 2001. *Allen v. DePuy International Ltd.*, [2015] EWHC (QB) 926 [16] (Eng.). The scheme is overseen by the Accident Compensation Corporation, a government entity tasked with determining coverage, providing entitlements, collecting levies, managing accounts, and administering deputies. *Id.*

¶ 42    In exchange for this no-fault compensation to victims, New Zealand has closed the courthouse doors to tort claims for compensatory damages for personal injuries. This bar is found in section 317 of the Accident Compensation Act, which reads in pertinent part as follows: "No person may bring proceedings independently of this Act, whether under any rule of law or any enactment, in any court in New Zealand, for damages arising directly or indirectly out of—

(a) personal injury covered by this Act[.]" Accident Compensation Act 2001, s 317(1) (N.Z.);

*McGougan*, [2018] NZCA 91, [2018] 2 NZLR 916 at [21].

¶ 43    "The bar in [section] 317(1) on proceedings for damages for personal injury has the effect

of precluding any claim for compensatory damages for personal injury in New Zealand where

there is cover under the Scheme." *Allen*, [2015] EWHC (QB) 926 [26]. The Act's overarching

goal was to substitute the common-law action with a comprehensive no-fault payment scheme

overseen by the Accident Compensation Corporation. See *id.* at [72] (concluding that the

Accident Compensation Act's effect was to "remove or render unavailable the right to recover

common law (compensatory) damages for personal injuries").

¶ 44    Simply put, the Accident Compensation Act is "a comprehensive administrative scheme

of no-fault compensation for persons injured there. *** There is simply no longer, under New

Zealand substantive law, a common law tort action for persons covered by the [Accident]

Compensation Act," at least for claims for compensatory damages for personal injury. *Bennett v.*

*Enstrom Helicopter Corp.*, 679 F.2d 630, 631-32 (6th Cir. 1982) (applying Michigan choice-of-

law principles). The "whole point of the statutory bar is that the lottery of compensatory damages

based on fault, and all of its associated cost, was to be substituted by a comprehensive

compensation scheme. Section 317 is an explicit and unequivocal prohibition on proceedings for

compensatory damages to achieve that objective." *McGougan*, [2018] NZCA 91, [2018] 2 NZLR

916 at [55].

¶ 45    The parties agree that plaintiff has suffered a personal injury covered by the Accident

Compensation Act, and that, as a resident and citizen of New Zealand, he is entitled to payment

from the Accident Compensation Corporation. Nobody disputes that, if this lawsuit were filed in

New Zealand, it would be barred by the Accident Compensation Act. (There is evidence in the

record that the Accident Compensation Corporation is compensating plaintiff for the injury at issue here; we have few details, but we do not consider that fact germane to the outcome.)

¶ 46     With that general understanding of New Zealand law in mind, we turn to our choice-of-law question.

¶ 47                                                III

¶ 48     Plaintiff claims that Illinois law is the substantive governing law here, while defendants claims that New Zealand substantive law governs.

¶ 49     When a tort lawsuit is filed in an Illinois court, and a party raises an issue as to the governing substantive jurisdictional law, we apply the choice-of-law rules from Illinois. *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 155 (2007). The first step is to determine whether an actual conflict exists between Illinois law and the law of the other jurisdiction, such that the choice of governing law would have an impact on the outcome of the lawsuit. *Id.* If there is no conflict—that is, if there is no outcome-determinative difference in the two jurisdictions' substantive law—then there is no need to proceed further, because it will make no difference, and we apply the law of the forum. *RS Investments Ltd. v. RSM US, LLP*, 2019 IL App (1st) 172410, ¶ 18 (" 'In the absence of a conflict, Illinois law applies as the law of the forum.' " (quoting *SBC Holdings, Inc. v. Travelers Casualty & Surety Co.*, 374 Ill. App. 3d 1, 13 (2007))).

¶ 50     If the court determines that a conflict exists, the court then proceeds to the second step of the analysis—determining which of the two jurisdictional laws (or some other one) applies. *Townsend*, 227 Ill. 2d at 159-60. In a tort case, we usually begin with the presumption that the situs of the plaintiff's injury is the governing substantive law and adhere to that presumption unless another jurisdiction has a more significant relationship to the case. *Id.* at 163; *Ingersoll v. Klein*, 46 Ill. 2d 42, 47-48 (1970). When the site of the injury owes to mere fortuity, as may be

the case here with the plane dipping mid-flight over the Indian Ocean, this presumption is not applied or may be relaxed. See *Perkinson v. Courson*, 2018 IL App (4th) 170364, ¶ 53; Restatement (Second) of Conflict of Laws § 145, cmt. e (1971).

¶ 51    The second-step analysis of whether another jurisdiction has the more significant relationship to the lawsuit is a lengthy and rigorous one, employing two different sections of the Second Restatement of Conflict of Laws and involving the consideration of numerous factors. See *Townsend*, 227 Ill. 2d at 160; Restatement (Second) of Conflict of Laws §§ 6, 145. We consider, to name a few, such factors as the policies of the forum and other interested jurisdictions, the relative interests of those jurisdictions in the determination of the particular issue in question, and such factual questions as the situs of the injury, the place where the conduct causing the injury occurred, the domicile and place of business of the parties, and any place where the relationship between the parties is centered. *Townsend*, 227 Ill. 2d at 160, 170; see *Kleronomos v. Aim Transfer & Storage Inc.*, No. 19-CV-01844, 2021 WL 1546428, at *1-3 (N.D. Ill. Apr. 20, 2021) (applying Illinois law).

¶ 52    We would note, as well, that yet another question would typically arise were an Illinois court to determine, as the circuit court did here, that a foreign jurisdiction's law governed— whether application of that foreign law would violate Illinois public policy. See, *e.g.*, *Marchlik v. Coronet Insurance Co.*, 40 Ill. 2d 327, 333-34 (1968) (Wisconsin direct-action statute violated Illinois public policy, and Illinois courts would not enforce it); *Pancotto v. Sociedade de Safaris de Mocambique, S.A.R.L.*, 422 F. Supp. 405, 411 (N.D. Ill. 1976) (applying Illinois law; "our educated prediction is that the Illinois courts would refuse to enforce the Portuguese limitation [on compensatory damages] as unreasonable and contrary to Illinois public policy").

¶ 53    But we need not elaborate further on this second step or on the public-policy question. As defendants note, plaintiff has not argued either of these issues. Plaintiff has not claimed that the court committed any error regarding this second step of the analysis. He has not argued any of these second-step factors detailed above. Nor has plaintiff made any argument regarding public policy. Plaintiff has raised one and only one challenge to the circuit court's ruling—that the court erred in the *first* step of the analysis by finding a conflict between the substantive laws of New Zealand law and Illinois.

¶ 54    So we obviously must limit our consideration to that single challenge to the court's first-step finding that a conflict exists. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (points not argued on appeal are forfeited); *Vancura v. Katris*, 238 Ill. 2d 352, 369 (2010) ("this court has repeatedly held that the failure to argue a point in the appellant's opening brief results in forfeiture of the issue"). Forfeiture applies with particular force to an appellant because, while we may affirm a judgment on any basis in the record, even if not argued on appeal, we may not *reverse* on any basis in the record; the issue must be raised and argued to us. *People ex rel. Department of Human Rights v. Oakridge Healthcare Center, LLC*, 2020 IL 124753, ¶ 36.

¶ 55    We may affirm a judgment on any basis in the record for purposes of economy to the parties and the judiciary; if the same result will ultimately obtain in the trial court for a reason not currently articulated by the lower court or the parties, it helps no one to delay the inevitable. But it is long and firmly settled that we do *not* search for reasons to *overturn* a circuit court's judgment. *People v. Givens*, 237 Ill. 2d 311, 323 (2010) (reviewing court " 'should not normally search the record for unargued and unbriefed reasons to *reverse* a trial court judgment' " (emphasis in original) (quoting *Saldana v. Wirtz Cartage Co.*, 74 Ill. 2d 379, 386 (1978))); see *People ex rel. Akin v. Southern Gem Co.*, 332 Ill. 370, 372 (1928) (while reviewing court "will

examine the record for the purpose of affirming a judgment it will not do so for the purpose of reversing it").

¶ 56    Among the many reasons for this principle is that searching the record for unargued errors "transform[s] the court's role from that of jurist to advocate" and forces the court "to speculate about the arguments the parties might have presented had the issues been raised." *Givens*, 237 Ill. 2d at 328, 329.

¶ 57    Thus, the only question before us is whether the court correctly found that a conflict existed between the substantive laws of Illinois and New Zealand, such that the application of one versus the other would make a difference in the outcome of this case.

¶ 58    Plaintiff argues that there is no conflict. His argument relies on a textual interpretation of section 317 of the Accident Compensation Act, which we provide here in pertinent part once more:

"(1) No person may bring proceedings independently of this Act, whether under any rule of law or any enactment, *in any court in New Zealand*, for damages arising directly or indirectly out of—

(a) personal injury covered by this Act[.]" (Emphasis added.) Accident Compensation Act 2001, s 317(1) (N.Z.).

¶ 59    Plaintiff points to the italicized language above and argues that section 317 only bars lawsuits filed in a New Zealand court, not an Illinois court. The problem is that plaintiff is treating section 317 as if it is being raised as a jurisdictional bar. And thus the question he tries to answer: does section 317, or does it not, prohibit an Illinois court from exercising jurisdiction over the *Airbus* suit? He says it does not, because the language only prohibits such suits in a *New Zealand* court. He is almost surely right about that—but that is not the question before us.

¶ 60    From the perspective of a jurisdictional bar, we agree that section 317 does not bar this suit in an Illinois court. Illinois courts are bound to follow the Illinois and U.S. Constitutions, Illinois and federal laws, and binding common-law precedent. No foreign law could dictate matters of jurisdiction, substance, or procedure to Illinois—not a law in New Zealand or Panama or France or North Korea. See *Bennett*, 679 F.2d at 631 (in responding to same textual argument made here by plaintiff regarding section 317: "We agree, of course, with [plaintiff's] implicit premise that the New Zealand legislature cannot restrict the jurisdiction of the courts of other sovereign states."). And that is surely why the language of section 317 reads as it does—New Zealand recognizes the elementary fact that it has no authority to restrict the jurisdiction of other courts around the world, to dictate to other sovereigns what suits they may or may not entertain.

¶ 61    But the question before us is not one of jurisdiction. It is a choice-of-law analysis, which is fundamentally different. Our choice-of-law doctrine recognizes that, because Illinois has such liberal personal and subject-matter jurisdictional rules, sometimes cases will be brought (properly) in Illinois but might be governed by the substantive law of another jurisdiction—be it a sister state or a foreign country. If we determine that another jurisdiction's substantive law should apply, we choose to follow that law because it is the most appropriate under the circumstances of this case—not because that jurisdiction gives or does not give us permission to entertain the suit. (And as noted earlier, even when we find another jurisdiction's substantive law applicable, we reserve the right to choose *not* to enforce it if it violates Illinois public policy.)

¶ 62    So when we determine, in step one of the choice-of-law analysis, whether a conflict exists between the two jurisdictions, we do not ask whether New Zealand would permit Illinois to entertain the suit in the first instance. We do not require New Zealand's permission. We ask this question: if New Zealand law were the governing substantive law in this case, would the

outcome of this lawsuit be different than if Illinois law were the governing substantive law? See *Bridgeview Health Care Center, Ltd. v. State Farm Fire & Casualty Co.*, 2014 IL 116389, ¶ 14; *Townsend*, 227 Ill. 2d at 156.

¶ 63     And the answer to that question is a clear and unequivocal "yes." The substantive law of New Zealand and that of Illinois could not be more different on the question before us—not because of the language plaintiff isolates in section 317 but because, generally, one jurisdiction's substantive law recognizes a common-law tort action for compensatory damages based on personal injuries, and the other's does not.

¶ 64     Illinois, obviously, allows a plaintiff to sue in tort for compensatory damages arising from personal injuries. See, *e.g.*, *Townsend*, 227 Ill. 2d at 156; *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 406 (1997) ("There is universal agreement that the compensatory goal of tort law requires that an injured plaintiff be made whole."); *Prouty v. City of Chicago*, 250 Ill. 222, 226 (1911) ("One who suffers an injury to his person as a consequence of the wrongful or negligent act of another has a right of action for the damages resulting from such injury without the aid of any statute but by a right which existed at common law.").

¶ 65     In stark contrast, New Zealand has altogether supplanted common-law tort actions for compensatory damages for personal injury and replaced it with a comprehensive scheme of taxpayer-funded compensation to victims of personal injury without requiring that the person prove fault of any kind. Simply put, a common-law action for compensatory damages arising from personal injuries is barred under New Zealand law. *Bennett*, 679 F.2d at 631-32.

¶ 66     The laws of New Zealand and Illinois conflict every bit as much as the laws of Michigan and Illinois conflicted in *Townsend*, 227 Ill. 2d at 156. In that product liability action, Illinois allowed claims of strict liability in tort, whereas Michigan did not. *Id.* Michigan capped

compensatory damages for personal injury, while Illinois contained no such cap. *Id.* Michigan barred the recovery of punitive damages in product liability claims, whereas Illinois did not. *Id.*; see also *Kleronomos*, 2021 WL 1546428, at *2 (applying Illinois law; conflict of laws existed between Illinois and Wisconsin, as Wisconsin capped punitive damages and Illinois did not).

¶ 67    So if the *Townsend* plaintiff's lawsuit were governed by Michigan law, his claim for strict liability would have been subject to immediate dismissal, because Michigan law did not recognize that doctrine. The same would be true of his claim for punitive damages—stricken at the outset because they were disallowed by Michigan law. And of course, his compensatory damages would have been capped. Each of those outcomes would have been different had Illinois law been the substantive governing law.

¶ 68    Likewise here. If the *Airbus* suit proceeded under Illinois law, plaintiff could have recovered compensatory damages for his personal injuries, provided he proved the elements of his tort claims. But if *Airbus* proceeded under the substantive law of New Zealand, his tort claim for compensatory damages would be barred, and thus the suit would be subject to immediate dismissal. See *Bennett*, 679 F.2d at 631-32.

¶ 69    The circuit court did not err in finding that a conflict of laws existed. As the question of the existence of a conflict is the only error plaintiff assigns, and we find no error in that determination, we have no basis to disturb the circuit court's judgment.

¶ 70                                    CONCLUSION

¶ 71    The judgment of the circuit court is affirmed.

¶ 72    Affirmed.

---

*Tuna v. Wisner*, 2023 IL App (1st) 211327

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-L-6619; the Hon. Margaret A. Brennan, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | George W. Spellmire, of Spellmire Bruck LLP, and Steven S. Shonder, both of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Joseph R. Marconi, David M. Macksey, Carlos A. Vera, and Adam J. Sedia, of Johnson & Bell, Ltd., of Chicago, for appellees. |

---