2025 IL App (1st) 241290-U
No. 1-24-1290

SIXTH DIVISION
September 30, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

---

| | | |
|---|---|---|
| SHAUL A. ISRAEL, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 23 L 4318 |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | The Honorable |
| Defendant-Appellee. | ) | Barbara N. Flores, |
| | ) | Judge Presiding. |
| | ) | |

---

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Hyman and Gamrath concurred in the judgment.

**ORDER**

¶ 1    *Held:* We affirm the trial court's grant of defendant's motion to dismiss plaintiff's complaint with prejudice because the statute of limitations lapsed for all claims, and defendant did not violate the Illinois Uniform Conviction Information Act where the incorrect information at issue is not conviction information as defined by the Act.

¶ 2    Plaintiff Shaul A. Israel appeals *pro se* from the trial court's grant of defendant, the City of Chicago's motion to dismiss his complaint for a violation of the Illinois Uniform Conviction Information Act (Conviction Information Act) (20 ILCS 2635/1 (West 2020) and defamation. On appeal, defendant contends that the trial court erred in dismissing his complaint because the Local Governmental and Governmental Employees Tort Immunity Act (Tort

Immunity Act) and the absolute privilege afforded government officials were inapplicable, the discovery rule tolled the statute of limitations for his defamation claims, and he alleged sufficient facts to establish defamation *per se* and defamation *per quod*. For the following reasons, we affirm.

¶ 3                                      I. BACKGROUND

¶ 4         The following facts are adduced from plaintiff's February 29, 2024, *pro se* amended complaint, federal complaint attached to defendant's motion to dismiss, and response brief to defendant's motion to dismiss filed in the trial court. Plaintiff was previously a resident of Chicago until September 2008 and, at the time of the filing of the amended complaint, was domiciled in Newport News, Virginia.

¶ 5         On May 18, 2006, Chicago police officers stopped and searched plaintiff without probable cause or reasonable articulable suspicion that he had committed a crime. The officers informed plaintiff that he was the subject of an active investigative alert and, after they placed him in custody, questioned him about an armed robbery. The officers also placed him in two lineups and a photo array. The Assistant State's Attorney then told the investigating detectives not to "charge" plaintiff with armed robbery due to a "lack of evidence." The police subsequently charged plaintiff with drinking alcohol on the public way and released him subject to an Individual Recognizance Bond. This charge was disposed as a non-suit on June 23, 2006.

¶ 6         In 2008, plaintiff moved to Virginia "to escape a concerted pattern of police harassment" from the Chicago Police Department (CPD) between 2006 and 2008. Subsequently, in 2015 or 2016, plaintiff applied for a taxicab drivers permit in Virginia. As part of the application, plaintiff requested his Criminal History Report from the CPD, which revealed "no felony arrests"; however, it showed plaintiff's arrest for drinking alcohol on the public way. The application also required plaintiff's sealed Identity History Summary from the Federal Bureau of Investigation

(FBI), which was transmitted to the Virginia State Police. Plaintiff was subsequently informed that the two reports had "discrepancies." Regardless, plaintiff obtained his taxicab drivers permit, "assuming it to be a clerical error."

¶ 7    In 2021, plaintiff began the process of applying to law schools, which included answering "character and fitness" questions describing prior criminal offenses. His application to the University of the District of Columbia (D.C.) was "flagged," causing the school to request a more detailed Criminal History Report from the CPD and an explanation for the charges on the reports. The University of D.C., which was plaintiff's "top-pick" law school, denied plaintiff admittance after a "felony arrest was reflected in the background check."[1] Plaintiff later discovered that the FBI Identity History Summary showed a May 18, 2006, arrest for two charges: "armed robbery/armed w/firearm" and "ordinance." According to plaintiff, his application was denied due to the inaccurate armed robbery arrest on the FBI Identity History Summary, which had been transmitted to the FBI by the Illinois State Police, who in turn received the records from the CPD.

¶ 8    On February 8, 2022, plaintiff contacted the CPD, FBI, Chicago Police Bureau of Internal Affairs (BIA), and the Cook County State's Attorney Office, to correct the criminal history report. The FBI informed plaintiff that he needed to file a "challenge of I.D." The CPD transferred plaintiff to the BIA, where he left messages regarding the issue. The Cook County State's Attorney's Office forwarded the inquiry for review.

¶ 9    On February 10, 2022, Detective Mullings of the BIA informed plaintiff that she did not see a charge of armed robbery in the CPD system but asked plaintiff to send her both criminal

---

[1] The record is unclear as to whether the University of D.C. Law School reviewed the CPD Criminal History Report, the FBI Identity History Summary, or both, prior to denying plaintiff admittance.

history reports, and she would investigate the matter.[2] That same day, plaintiff called the Cook County State's Attorney's Office, a representative of which noted the existence of the arrest and charge of armed robbery, and directed plaintiff to the court clerk to obtain further disposition information. Plaintiff reached out to the BIA again and spoke with a sergeant who "emphatically insisted" that the armed robbery charge did not exist in the Chicago database.

¶ 10     On February 14, 2022, plaintiff filed a complaint against the City of Chicago in the Northern District of Illinois for (1) a violation of 42 U.S.C. § 1983, (2) violation of the fourth amendment of the United States Constitution, (3) violation of the Illinois constitution, (4) false imprisonment, and (5) defamation *per se*. In his federal complaint, plaintiff additionally alleged that in 2009, he and his family were denied public housing "because a background report revealed a felony charge, but no further information was provided." Further, in 2012, plaintiff was denied a concealed handgun permit in Virgina due to a "violent felony arrest" on his criminal history.

¶ 11     On October 20, 2022, during the pendency of plaintiff's federal case, plaintiff sent Lieutenant Arleseuia Watson of the BIA his FBI Identity History Summary. She then contacted plaintiff and informed him that she would "confer with the Illinois State Police to ensure the erroneous information is corrected." On November 12, 2022, Watson emailed plaintiff, confirming that his "Interstate Identification Index Response has been updated via the State of Illinois State Police." She informed him that another officer would move forward with the investigation, but "completion is imminent."

¶ 12     On March 28, 2023, the federal court dismissed plaintiff's complaint, finding his federal claims to be time-barred, and relinquishing federal jurisdiction of his state law claims of violations of the Illinois constitution and defamation *per se*. *Israel v. City of Chicago*, 2023 WL

---

[2] Detective Mullings' first name does not appear in the record on appeal.

2664011 (N.D. Ill. March 28, 2023). The court noted that the statute of limitations for the state law claims tolled during the pendency of the federal action, and the statute of limitations for the defamation claim had not yet expired. *Id*. at *3-4.

¶ 13        Plaintiff filed his initial state law complaint against defendant in the trial court on April 26, 2023, alleging defamation *per se* and defamation *per quod*, regarding the transmission of the record containing the armed robbery charge to the University of D.C. Law School. Plaintiff subsequently filed an amended complaint on February 29, 2024, alleging a violation of the Conviction Information Act in addition to the two defamation counts. Plaintiff sought, *inter alia*, punitive damages.

¶ 14        Plaintiff attached a printout of the application summary for his University of D.C. Law School application, including his answers to the character and fitness questions regarding whether he had been arrested or charged with a crime. Plaintiff included a typed addendum describing, *inter alia*, the May 18, 2006, arrest. Plaintiff related that he was told he "fit the description of a suspect that was wanted in connection with a crime," was transported to the police station, and placed in a line-up. He stated that he signed a bond for "drinking alcohol on the public way," which was disposed of on June 23, 2006, as a non-suit. Plaintiff also listed other arrests, but noted that his record showed "no felony arrests or convictions." Plaintiff also attached email correspondence with the CPD from October and November 2022, reflecting communication relating to the correction of his criminal history records.

¶ 15        On March 18, 2024, defendant filed a combined motion to dismiss under 735 ILCS 5/2-619.1 (West 2024), arguing multiple bases for dismissal under sections 2-619 and 2-615 of the Code of Civil Procedure (Code). Defendant contended that under section 2-619(a)(9), plaintiff's defamation counts were barred by the Tort Immunity Act and by absolute privilege because the

reports were issued by government officials acting within the scope of their duties. It also argued that his complaint should be dismissed in its entirety under section 2-619(a)(5) as all counts were untimely filed. Defendant further contended, under section 2-615, that plaintiff failed to state a cause of action for defamation because his complaint was conclusory, the allegation of arrest did not constitute defamation *per se*, and the statement that he had been arrested for armed robbery was true. Defendant further contended under section 2-615 that plaintiff failed to state a cause of action under the Conviction Information Act where plaintiff's arrest record did not reflect a conviction, and defendant's records, unlike the records transmitted by the Illinois State Police and FBI, did not show an arrest for armed robbery. Finally, defendant contended that plaintiff's punitive damages claim was barred by the Tort Immunity Act. Defendant attached plaintiff's state and federal complaints.

¶ 16        Plaintiff responded, noting that in 2016, the "Taxicab examiner" who was employed by the Newport News Police Department, informed him about the "blemish" in the FBI records. Plaintiff contended that because the charge was not in the CPD records, the examiner "dismiss[ed] it as a clerical error" and issued plaintiff a taxicab license. Plaintiff acknowledged that he knew about the issue at this time; however, the issue only affected "his livelihood" in 2021, when the false information was transmitted to the University of D.C. Law School. At that point, "he began to work effortlessly toward remedy."

¶ 17        After a hearing, the court granted defendant's motion to dismiss in a written order on May 21, 2024.[3] The court found that plaintiff's claim alleging a violation of the Conviction Information Act was barred by the three-year statute of limitations, because plaintiff first learned of the discrepancy between CPD and FBI records in 2016, and this same conflict eventually caused

---

[3] The record on appeal lacks a report of proceedings.

the University of D.C. to deny his application in 2021. The court also granted defendant's motion to dismiss plaintiff's defamation claims under both sections 2-615 and 2-619, because (1) plaintiff was arrested for armed robbery, not convicted, and true statements cannot be a basis for defamation; (2) the defamation claims were barred by the statute of limitations because, as noted, plaintiff first became aware of the conflict in his arrest records by 2016, and (3) the defamation claims were barred under the Tort Immunity Act.

¶ 18       Defendant filed a timely notice of appeal on June 20, 2024.

¶ 19                                 II. ANALYSIS

¶ 20       On appeal, defendant argues that the trial court erred in granting defendant's motion to dismiss his complaint because his defamation counts were not barred by the Tort Immunity Act, where defendant's actions were willful and wanton. Defendant also contends that the defamation counts were not barred by absolute privilege, as the officers were not acting within the scope of their duties where they disseminated false information and were malicious to him. Defendant further argues that none of his claims are barred by the statute of limitations, as he first discovered the publication of the false charge when he applied to law schools in 2021. Finally, defendant contends that the court erred in dismissing his defamation claims where he alleged sufficient facts entitling him to relief.

¶ 21                              A. Standard of Review

¶ 22       This appeal is pursuant to a combined motion to dismiss under section 2-619.1 of the Code. Section 2-619.1 allows, in relevant part, "[m]otions with respect to pleadings under Section 2-615, motions for involuntary dismissal or other relief under Section 2-619 *** [to] be filed together as a single motion in any combination. 735 ILCS 5/2-619.1 (West 2024). A section 2-615 motion to dismiss challenges the legal sufficiency of the complaint based upon defects apparent on its face.

*EBNB 70 Pine Owner Restaurant v. Fireman's Fund Insurance Company*, 2024 IL App (1st) 231863, ¶ 17; 735 ILCS 5/2-615 (West 2024). A section 2-619 motion to dismiss admits the legal sufficiency of the complaint, but asserts an affirmative defense or other ground to defeat plaintiff's complaint. *Bernacchi v. Illinois Department of Insurance*, 2024 IL App (1st) 231710, ¶ 13; 735 ILCS 5/2-619 (West 2024). A defendant may also raise an affirmative defense in a section 2-615 motion if the defense is apparent from the face of the complaint. *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 18. "The resolution of either motion involves only a question of law, and therefore this court's review is *de novo*." *Tielke v. Auto Owners Insurance Company*, 2019 IL App (1st) 181756, ¶ 22.

¶ 23                                B. Statute of Limitations

¶ 24        Section 2-619(a)(5) of the Code provides a basis for involuntary dismissal because "the action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2020). Claims raised under the Conviction Information Act are subject to a three-year statute of limitations "from the date of the violation *** [or] from the date the plaintiff should reasonably have known of [the] violation." 20 ILCS 2635/24 (West 2020). Additionally, defamation claims against local public entities or its employees must be commenced "within one year from the date that the injury was received or the cause of action accrued," under the Tort Immunity Act. 745 ILCS 10/8-101(a) (West 2020); *Chadha v. North Park Elementary School Association*, 2018 IL App (1st) 171958, ¶ 45.

¶ 25        Plaintiff does not contest that the statutes of limitations apply to his claims. He, however, contends that the discovery rule tolled the statutes of limitations because he had no reason to discover the cause of action until 2021, when the University of D.C. denied his application due to the erroneous armed robbery arrest in the FBI report. Plaintiff argues that no agency from 2006 to

2021 informed him of the nature of the inaccuracy in his criminal records, and he only learned of the incorrect armed robbery charge after the erroneous information had been transmitted to the University of D.C. Law School. Because the error began "affecting his livelihood," plaintiff sought a remedy. Thus, according to plaintiff, he filed his federal complaint within one year of his discovery of the false charge.

¶ 26    With regard to defamation cases, the cause of action accrues "on the date that an allegedly defamatory statement is published." *Ciolino v. Simon*, 2021 IL 126024, ¶ 19. "The word publication is a term of art referring to the intentional or negligent communication of the allegedly defamatory statement to a third party, that is, a person other than the person who is allegedly defamed." (Internal quotation marks omitted.) *project44, Inc. v. FourKites, Inc.*, 2024 IL 129227, ¶ 21.

¶ 27    "Under the discovery rule, the limitations period would not begin to run until such time a person knows, or reasonably should have known, of his or her injury and that such injury was wrongfully caused." *Peal v. Lee*, 403 Ill. App. 3d 197, 207 (2010). The purpose of the discovery rule is to "encourage diligent investigation on the part of potential plaintiffs without foreclosing claims of which plaintiffs could not have been aware." *Mitsias v. I-Flow Corp.*, 2011 IL App (1st) 101126, ¶ 21. The limitations period, thus, commences when "the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Guarantee Trust Life Insurance Co. v. Kribbs*, 2016 IL App (1st) 160672, ¶ 29. A plaintiff need not discover the full extent of his injuries before the statute of limitations begins to run (*Hoffman v. Orthopedic Systems, Inc.*, 327 Ill. App.3d 1004, 1010 (2002)), nor know about a specific defendant's wrongful conduct (*Castello v. Kalis*, 352 Ill. App. 3d 736, 744 (2004)).

¶ 28    We have noted the existence of a "degree of uncertainty" as to the application of the discovery rule in defamation cases, but have established that it should not be applied "unless the publication was hidden, inherently undiscoverable, or inherently unknowable." *Peal*, 403 Ill. App. 3d at 207. Whether a plaintiff's knowledge triggers the statute of limitations may be resolved as a matter of law where "the facts are undisputed and only one conclusion may be drawn from them." *Henderson Square Condominium Association v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 52.

¶ 29    Here, it is undisputed that plaintiff knew about the discrepancy between the CPD and FBI reports well before he applied to law schools in 2021. See *id*. In plaintiff's federal complaint, which was attached to defendant's motion to dismiss, he alleged that, in 2009, he and his family were denied public housing "because a background report revealed a felony charge." Additionally, he alleged that, in 2012, he was denied a concealed handgun permit in Virgina due to a "violent felony arrest" on his criminal history. Even discounting these two earlier publications addressed in the federal complaint, plaintiff alleged that in 2016, he learned about a "blemish" or discrepancy between the FBI and CPD reports when he applied for his taxicab drivers permit in Virginia. Plaintiff was informed of the discrepancy, but took no action because his permit was allowed. Even if plaintiff or the examiner assumed the matter to be a clerical error, in 2016, he still became aware of the incorrect information on one of his criminal histories, which was published to the examiner. Although plaintiff had not yet been negatively impacted by the publication, he was aware of it. See *Ciolino*, 2021 IL 126024, ¶ 19 (the statute of limitations begins to run on the date that the allegedly defamatory statement is published). Plaintiff may not have been aware of the details surrounding the allegedly defamatory publication, but he knew that the FBI Identity History Summary contained incorrect information. Nothing about the publication was hidden, inherently undiscoverable, or inherently unknowable prior to 2021. See *Peal*, 403 Ill. App. 3d at 207. Plaintiff,

rather, chose not to investigate the issue until 2021, because it had not yet "affect[ed] his livelihood."

¶ 30      Thus, the court did not err in granting defendant's motion to dismiss plaintiff's defamation counts because the statute of limitations had lapsed. Accordingly, we need not address whether the Tort Immunity Act or absolute privilege applies to immunize defendant regarding plaintiff's defamation counts, and whether his defamation *per se* claim fails on the merits.

¶ 31                         C. Conviction Information Act

¶ 32      Plaintiff's Conviction Information Act claim is similarly barred by the three-year statute of limitations. However, even if we do not address the statute of limitations, plaintiff's Conviction Information Act claim fails on the merits as plaintiff has not alleged that defendant disseminated inaccurate conviction information. See *Tuna v. Wisner*, 2023 IL App (1st) 211327, ¶ 55 (we may affirm a judgment on any basis in the record in order to promote economy to the parties and the judiciary).

¶ 33      The Conviction Information Act exists in part to "ensure the accuracy and completeness of conviction information in the State of Illinois" and to "establish procedures for effectively correcting errors and providing individuals with redress of grievances in the event that inaccurate or incomplete information may be disseminated about them." 20 ILCS 2635/2(B) (West 2020). As such, the statute provides guidelines for correcting inaccurate conviction information. 20 ILCS 2635/7(A)(4) (West 2020); 20 ILCS 2635/9 (West 2020). The Conviction Information Act also establishes the right of aggrieved parties to pursue civil actions against units of local government or State agencies for violations of the statute. 20 ILCS 2635/14(B)-(D) (West 2020).

¶ 34      The Conviction Information act applies only "to conviction information mandated by statute to be reported to or to be collected, maintained, or disseminated by the Illinois State Police."

20 ILCS 2635/4(A) (West 2020). "Conviction information" is defined by the statute as "data reflecting a judgment of guilt or nolo contendere. The term includes all prior and subsequent criminal history events directly related to such judgments." 20 ILCS 2635/3(F) (West 2020). These criminal history events include, *inter alia*, "(1) the notation of arrest; (2) the notation of charges filed; (3) the sentence imposed; (4) the fine imposed; and (5) all related probation, parole, and release information." *Id*. Under the Conviction Information Act, information ceases being "conviction information" when the judgment of guilt is reversed or vacated. *Id*.

¶ 35    Regarding the inaccurate information at issue, the incorrect armed robbery arrest, such information is not "conviction information" to trigger procedures under the Conviction Information Act. See *id*. Namely, in plaintiff's complaint, he alleges that in 2006, he was taken into custody, questioned regarding an armed robbery, and placed in a lineup. After the Assistant State's Attorney informed the detectives not to charge plaintiff with armed robbery due to a lack of evidence, the police charged plaintiff with drinking alcohol on the public way, which was disposed as a non-suit on June 23, 2006. Neither the armed robbery arrest nor the drinking alcohol on a public way charge reflected a judgment of guilt or *nolo contendere*. See *id*. We must adhere to the definition of the term in the Conviction Information Act. See *City of Chicago ex rel. Walton v. Prog Leasing, LLC*, 2023 IL App (1st) 220714, ¶ 20 ("When a statute defines terms used within the statute, those terms must be construed according to the definitions contained in the act." (Internal quotation marks omitted.)).

¶ 36    Accordingly, the court did not err in dismissing plaintiff's Conviction Information Act claim, where no conviction existed.

¶ 37    Having found that plaintiff has no basis for relief, we must address the lack of clarity regarding the nature of the incorrect information in plaintiff's criminal records. The "blemish"

described by plaintiff refers to a charge of armed robbery in the FBI Identity History Summary transmitted from the Illinois State Police, who received it from the CPD. The corresponding CPD records, however, did not contain this charge. Plaintiff attached emails with the CPD wherein they acknowledged the information was erroneous and asserted that they would work with the Illinois State Police to correct the records.

¶ 38    Plaintiff acknowledges that he was taken to the police station and questioned regarding an armed robbery before being released on a charge of drinking alcohol on the public way. However, the circumstances for his release are unclear. If the CPD received incorrect information that implicated plaintiff, it had a duty to correct that information before plaintiff's criminal history became tainted by CPD's own error. The interest of citizens in having correct information includes the interest in having complete information, so when arrests are made but do not result in charges, that information and the reason for the police action should also be made part of the record. This is especially important if the CPD arrested the incorrect person. Here, the incorrect or incomplete information on plaintiff's records has obviously negatively impacted plaintiff's life and career opportunities. CPD, thus, has an obligation to transmit correct information so it could subsequently rely upon correct information when communicating plaintiff's criminal history to third parties. The harm to plaintiff could have been avoided had CPD relied on correct and complete information in the first place.

¶ 39    Regardless, as outlined above, plaintiff knew about discrepancies in his criminal records in 2016, but chose to untimely file his defamation claims after he was denied entry to the University of D.C. Law School in 2021. Additionally, plaintiff's Conviction Information Act claim fails because no conviction information was implicated. Thus, the trial court did not err in granting defendant's motion to dismiss.

¶ 40                                    III. CONCLUSION

¶ 41          For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 42          Affirmed.